720 P.2d 1237

Anne M. DUNNING,
Petitioner-Appellee,

v.

Hal H. DUNNING,
Respondent-Appellant.

No. 7762.

Court of Appeals of New Mexico.

May 16, 1985.

Ann Yalman, Sarah Michael Singleton, Nancy Augustus, Singleton Law Offices, Santa Fe, for petitioner-appellee.

Michael A. Kauffman, Montoya, Murphy, Kauffman & Garcia, Santa Fe, for respondent-appellant.

## OPINION

ALARID, Judge.

Hal H. Dunning, respondent-appellant (respondent), appeals from an adverse ruling of the trial court on his motion to terminate alimony. Respondent, in October 1982, filed a motion to terminate alimony. The trial court refused to allow an increase in the percentage of respondent's military retirement payable as alimony, which was called for under the terms of the original decree. The trial court, however, refused to reduce alimony and ordered respondent to continue to pay 25.3 percent of his retirement pay as alimony. Respondent alleges two grounds for error on appeal: (1) whether the trial court abused its discretion in failing to terminate, or reduce, respondent's alimony obligations due to the decreased need of the petitioner; and (2) whether the trial court abused its discretion by refusing to modify a provision in the original decree which expressed respondent's monthly alimony obligation in terms of a percentage of his monthly retirement benefits. We hold that the trial court did not abuse its discretion in failing to terminate, or reduce, respondent's alimony obligations due to the decreased need of the petitioner. We also hold that the alimony award of 25.3 percent of respondent's military retirement is not invalid per se, and that the trial court's ruling that petitioner will continue to receive alimony in the amount of 25.3 percent of respondent's gross military retirement is affirmed to the extent this ruling is based on respondent's present military retirement. Should there be an increase in the amount of the retirement, whether the 25.3 percent factor should be applied to the increase is to be determined in accordance with this opinion.

## FACTS

Only the alimony provisions of the original decree are at issue in this appeal. The parties were divorced in 1977. At trial, the court found that 18.76 percent of respondent's military pay was community proper-

ty and, thus, awarded petitioner 9.38 percent of respondent's retirement benefits. Respondent does not dispute this provision. The original decree awarded, as alimony, 25.3 percent of respondent's military retirement benefits. The original decree, however, contained an additional provision with respect to alimony, which provided that if respondent changed the beneficiary of the military retirement's survivor plan (the named beneficiary was the parties' child, Clare, who lived with petitioner at the time of the divorce), the petitioner's alimony would be increased to 30 percent of the respondent's gross monthly military retirement. The trial court modified the contingent percentage increase in alimony retroactive to December 1982, determining that there should be no increase in the percent of alimony, despite the fact that the beneficiary was changed.

Hal Dunning is 63 years old. At the time of the divorce, he was in good health and received income from his military benefits, commissions he received as an insurance agent, and gains and losses from his stock account. He also had a pilot license with an airline/transport rating, although he earned no income as a pilot.

In June 1981, Mr. Dunning suffered a disabling stroke. Although he has now largely recovered, he has lost his pilot's license and his income from insurance sales has been cut by three-fourths. Since October 1982, he has received about $385 a month in social security benefits which he gives to his new wife for rent. In addition to the monthly social security payments, the trial court found that Mr. Dunning receives approximately $3,600 per month in military retirement, and about $4,000 to $5,000 per year from insurance commissions. The court also found that Mr. Dunning had savings, stocks and bonds, and liquid asset accounts in the approximate amount of $55,000. In addition, Mr. Dunning has medical/dental benefits and PX/Commissary privileges from the military. Mr. Dunning did not dispute his ability to make the alimony payments, but argued only that the petitioner's situation had changed so as to warrant a termination or reduction of alimony.

The petitioner and respondent were married for 31 years. Although Anne Dunning received a B.S. in medical technology in 1942, she remained unemployed since a few months after the marriage, with the exception of a brief part-time job in 1974. The parties have four children, all of whom are now adults. At the time of the divorce, the youngest child lived at home, but he is now in college.

After the divorce, Ms. Dunning unsuccessfully looked for a job. She took some of the money she received in the property settlement and bought some property in Colorado in February 1977. Ms. Dunning became interested in solar design and construction, and started to build her own residence in the summer of 1977. Ms. Dunning undertook an independent course of study in construction and became a licensed contractor in 1978. In 1979, Ms. Dunning formed Sol-Con, a wholly-owned Subchapter S corporation. Sol-Con undertook the construction of a "speculation house." Ms. Dunning's residence was appraised at $102,600. Ms. Dunning, however, contends that this value is overstated because the house is not quite finished and is in need of some repair. The trial court found that the value of the residence was between $100,000 and $102,000.

Ms. Dunning sold the property in Colorado for $62,000 in September 1980. At the time of the hearing, Ms. Dunning was still paying the mortgage on the property in the amount of $304 per month, but was receiving $550 per month as a result of the sale. In October 1984, she was scheduled to receive the balance in a balloon payment of $40,000 to $46,000. She was going to actually receive only about half, however, as $23,000 was committed to repayment of a bank loan.

Sol-Con has never provided adequate security for Ms. Dunning. Indeed, its future is in doubt. Al Castillo, a certified public accountant, testified that the corporation is insolvent. The corporation has never made a profit, but, rather, has demonstrated losses since its inception. At the time of the hearing, the corporation's deficit was $90,-

140. The deficit has been as high as $114,000, but the reduction was brought about by the sale of the "spec" house which was the corporation's major asset. In Castillo's opinion, Sol-Con is a high-risk losing entity in a new field. The corporation has been able to stay in existence only by borrowing from banks, Ms. Dunning, and others. The corporation has been able to pay back some loans, but much of the debt has simply been refinanced, and this has resulted in accumulating debt. The district court found, however, that Sol-Con has profit-producing potential. Ms. Dunning believes that the outlook for the corporation will improve.

Ms. Dunning does not receive a wage from Sol-Con, but the corporation does pay her telephone, medical and auto (except gas) expenses. Ms. Dunning has no savings, stocks or bonds, IRA or Keough accounts, no social security benefits in her own right, and no retirement or pension plans. She will apparently be eligible at some time in the future for social security benefits through her husband. The corporation does make capital payments to Ms. Dunning, from time to time, to pay her back for the money she has lent the corporation, but at the time of the hearing she had not received what she had put in. The trial court found that Ms. Dunning has monthly living expenses of approximately $2,011, and has a personal monthly income from alimony, note payments, and community property payments of $1,800. This is in addition to the capital payments received from the corporation.

## DISCUSSION

### I. WHETHER THE TRIAL COURT ABUSED ITS DISCRETION IN FAILING TO TERMINATE OR REDUCE THE RESPONDENT'S ALIMONY OBLIGATIONS DUE TO DECREASED NEED OF THE PETITIONER.

The authority of the district courts to award spousal support is granted by statute in New Mexico. NMSA 1978, Section 40-4-7(A) (Repl.Pamp.1983). Section 40-4-7(B)(2) provides that the court "may modify and change any order in respect to alimony allowed either spouse, whenever the circumstances render such change proper[.]" However, Section 40-4-7(B)(1) provides only general guidelines for determining the amount of an alimony award. Section 40-4-7(B)(1) provides that the district court may award "a reasonable sum of money * * * as under the circumstances of the case may seem just and proper[.]" More specific guidelines were provided by the supreme court in *Michelson v. Michelson*, 86 N.M. 107, 110, 520 P.2d 263 (1974):

> Some of the important factors to be considered in a determination of the amount of alimony to be awarded are the needs of the wife, her age, health and the means to support herself, the earning capacity and the future earnings of the husband, the duration of the marriage, and the amount of property owned by the parties.

The supreme court has expressed approval for the idea that alimony should be viewed as a means of allowing a divorced spouse to gain personal independence by helping the person disadvantaged by the marriage and the divorce to extricate himself or herself from such a position. *Russell v. Russell*, 101 N.M. 648, 687 P.2d 83 (1984); *Lovato v. Lovato*, 98 N.M. 11, 644 P.2d 525 (1982). Alimony should not be structured so as to encourage the supported spouse to abdicate his or her responsibility to seek financial independence. *Lovato v. Lovato*. It is error, however, to base an alimony award on the premise that a spouse is entitled to support at a level which would allow a lifestyle comparable to that enjoyed by the parties during the marriage. *Hertz v. Hertz*, 99 N.M. 320, 657 P.2d 1169 (1983).

District courts are accorded great deference in determining alimony awards. *Hertz*. A determination of the amount of alimony rests within the trial court's discretion, and the trial court will be reversed only if its award is contrary to reason. *Russell v. Russell*. What constitutes an abuse of discretion must be determined on a case-by-case basis. *Id.*

The trial court in this case did not abuse its discretion in refusing to termi-

nate or reduce the amount of alimony. Mr. Dunning did not contest his ability to pay under the terms of the original decree, and his property and earning capacity are not at issue. The parties were married for thirty-one years. Ms. Dunning is an older woman who has re-entered the job market. The income to be received from the Colorado property is small compared to the debts of Sol-Con for which she is personally responsible. Ms. Dunning owns a valuable house, but it produces no income and is mortgaged against Sol-Con's debts. Sol-Con has yet to return Ms. Dunning's capital contributions. Ms. Dunning has no savings, retirement accounts, stocks or bonds. Her monthly living expenses are $2,011. Her monthly income from alimony, note payments and community property return only $1,800. Moreover, $550 of this income presumably ended in October when the balloon payment on the Colorado property was made.

The corporation has shown ability to repay debts and the district court found that it has profit-producing potential. The district court also found that "[s]ince the entry of the Decree of Dissolution, Petitioner has retrained herself in a new occupation and has diligently attempted to become self-sufficient as the owner of Sol-Con, Inc." The refusal to reduce or terminate alimony was consistent with the philosophy of alimony in *Lovato* and *Russell*, i.e., the petitioner is using the alimony to attempt to achieve financial independence. If Sol-Con's situation improves, respondent may be entitled to a modification, but at the present time, Sol-Con has yet to improve the petitioner's earning capacity. The trial court is affirmed as to this issue.

## II. WHETHER THE DISTRICT COURT ABUSED ITS DISCRETION BY REFUSING TO MODIFY A PROVISION OF THE ORIGINAL DECREE WHICH EXPRESSED RESPONDENT'S MONTHLY ALIMONY OBLIGATION IN TERMS OF A PERCENTAGE OF HIS MONTHLY MILITARY RETIREMENT BENEFITS.

■ Respondent challenges the validity of an alimony award which does not award a specific amount, but rather awards a given percentage of a portion of respondent's income. Petitioner argues that respondent is barred by res judicata from raising this argument because he did not appeal the original decree, citing *Myers v. Olson*, 100 N.M. 745, 676 P.2d 822 (1984), and *Smith v. Smith*, 98 N.M. 468, 649 P.2d 1381 (1982). Respondent is not barred because *Myers* involved a situation where the husband was attempting to attack the provisions of a final decree which determined the property interests of the parties. *Smith*, which involved a change in the amount of child support, is also distinguishable because here, unlike *Smith*, there has been no prior attempt to modify the decree. Therefore, the district court could properly consider all changed circumstances since the divorce. Here the challenge goes to alimony only, and pursuant to Section 40–4–7(B)(2), alimony awards can be modified whenever changed circumstances make a modification proper. *Cf. Parks v. Parks*, 91 N.M. 369, 574 P.2d 588 (1978). Respondent's appeal is not barred by res judicata.

■ Petitioner also argues that Colorado, not New Mexico, law should apply, because Colorado law was applied to the original decree. Petitioner is incorrect. The authority to modify an alimony award depends on the law of the jurisdiction which granted the award. *Brister v. Brister*, 92 N.M. 711, 594 P.2d 1167 (1979). Therefore, any modification should be governed by New Mexico law. *Id.*

The validity of sliding scale provisions for alimony has not been addressed in any published New Mexico cases, although the supreme court has mentioned "sliding scale formula" awards in an unpublished opinion. In *Weaver v. Weaver*, 100 N.M. 165, 667 P.2d 970 (1983) the Supreme Court stated that it had struck down such a provision in an unpublished decision regarding an earlier appeal of the same case. The court gave no reasons for striking the provisions in *Weaver*. The court, however, has upheld a sliding scale award in the child sup-

port area. *Henderson v. Lekvold,* 95 N.M. 288, 621 P.2d 505 (1980). We distinguish the escalator clause in *Henderson* on the basis that it was a child support case, and that the escalator provision came about as a result of a settlement negotiated by the parties, not as a result of a judicial determination. Parties to a divorce action can and are encouraged to settle their affairs with a minimum of judicial intervention, and marital settlement agreements are highly favored. *Id.*

Other jurisdictions which have directly considered the validity of escalator clauses in both alimony and child support cases are divided. Cases which hold that escalator provisions are invalid stress that clauses providing for automatic increases are contrary to statutes and cases which require changed circumstances in order for a divorce decree to be modified. *Roscini v. Roscini,* 41 A.D.2d 895, 342 N.Y.S.2d 681 (1973); *Golden v. Golden,* 37 A.D.2d 578, 323 N.Y.S.2d 714 (1971); *Jacobs v. Jacobs,* 219 Va. 993, 254 S.E.2d 56 (1979). The escalator clauses focus not on changed circumstances, but on the paying spouse's ability to pay. *Id.*

Cases upholding escalator clauses emphasize the need to protect the award against inflation. *Edwards v. Edwards,* 99 Wash.2d 913, 665 P.2d 883 (1983); *Heinze v. Heinze,* 122 N.H. 358, 444 A.2d 559 (1982); *Petersen v. Petersen,* 85 N.J. 638, 428 A.2d 1301 (1981). Escalator clauses are said to lend flexibility to trial judges who must find equitable solutions to difficult problems. *Hakken v. Hakken,* 100 Mich.App. 460, 298 N.W.2d 907 (1980). One advantage of escalator clauses is that they save the time and money of all the parties because they do away with the necessity of returning to court every time the paying spouse's income increases. *Spotts v. Spotts,* 355 So.2d 228 (Fla.App.), *cert. denied,* 361 So.2d 835 (1978). If changed circumstances make the escalator provision inequitable, the paying spouse can always seek a modification, and, in fact, in the case before us, the paying spouse sought such relief.

This court is being asked by respondent to invalidate, per se, alimony awards which are expressed in percentage terms because such awards result in automatic increases in the amount of alimony paid. In the present case, under the percentage formula, respondent's alimony payment has increased from approximately $525 per month at the time of the original decree to over $900 at the time of the motion to reduce or terminate alimony.

■ While realizing that escalator provisions in alimony cases are not universally favored, we will not adopt a rule which precludes their use in all cases. Rather, we adopt a position that allows the use of percentage alimony awards when appropriate safeguards are taken to insure that consideration is given to needs of the receiving spouse, as well as the ability of the paying spouse to pay the amount awarded.

In determining whether a percentage alimony award will be allowed to stand, the trial court, considering the totality of the circumstances, shall make certain that the need of the petitioner and the respondent's ability to pay are considered. The trial court shall consider the receiving spouse's income, expenses, ability of the receiving spouse to better his or her economic position, and the effort made by the receiving spouse to improve his or her economic position. *See Hertz v. Hertz; Lovato v. Lovato.* In addition, when the income base of the paying spouse is subject to escalation, the trial court will inquire into the reason for that escalation to determine whether it is due to factors such as cost of living, which would impact on both parties, or some other reason which may not affect the need of the receiving spouse. In this case, we note that the record is silent as to why respondent's military benefits increase.

Our disposition of the escalation issue in this case has three parts. (a) Respondent's argument that the alimony award of 25.3 percent of his military retirement award is illegal per se is rejected as without merit. (b) Respondent's argument that the present alimony payment of over $900 per month

(an amount arrived at by use of the 25.3 percentage) should be reduced was rejected by the trial court and we sustained the trial court in our discussion of the first issue. (c) The trial court ruled that: "Petitioner will continue to receive alimony in the amount of 25.3% of Respondent's gross military retirement." To the extent that this ruling is based on the amount of respondent's present military retirement, it is affirmed. Should there be an increase in the amount of respondent's military retirement, whether the 25.3 percentage factor should be applied to the increase is to be determined in accordance with this opinion. Inasmuch as knowledge of any increase will be more easily known to respondent than to petitioner, respondent shall move that the increase shall not be subject to the percentage factor for alimony. To encourage promptness on the part of respondent, the alimony percentage factor will apply to the interval between the increase and respondent's motion.

Each party shall bear its own costs of appeal. No attorney fees are awarded.

IT IS SO ORDERED.

WOOD and NEAL, JJ., concur.