KUNKLE, APPELLEE, *v.* KUNKLE, APPELLANT.

[Cite as Kunkle *v.* Kunkle (1990), 51 Ohio St. 3d 64.]

(No. 89-140—Submitted February 6, 1990—Decided May 9, 1990.)

*Drake, Phillips, Kuenzli, Clark &* *Weasel* and *William E. Clark,* for appellee.

*Jude T. Aubry Co., L.P.A.,* and *Jude T. Aubry,* for appellant.

DOUGLAS, J. The issues before this court focus on the award and payment of sustenance alimony. Did the trial court abuse its discretion in not terminating sustenance alimony payments on a date certain? May a trial court, pursuant to R.C. 3105.18 (A) and (B), award sustenance alimony based on a fixed percentage of the payor's gross annual income less FICA? When may a trial court make sustenance alimony payments chargeable against the payor's estate?

In Ohio, alimony consists of two components: a division of marital assets and liabilities, and periodic payments for sustenance and support. *Kaechele* v. *Kaechele* (1988), 35 Ohio St. 3d 93, 95, 518 N.E. 2d 1197, 1200. As part of a divorce proceeding, a trial court has equitable authority to divide and distribute the marital estate, and then consider whether an award of sustenance alimony would be ap-

propriate. *Holcomb* v. *Holcomb* (1989), 44 Ohio St. 3d 128, 541 N.E. 2d 597; R.C. 3105.18(A).

Courts in this state derive their power to award sustenance alimony from the statutes. R.C. 3105.18(A) and (B) provide a trial court with guidelines for determining whether alimony is necessary and the nature, amount and manner of alimony payments. *Wolfe* v. *Wolfe* (1976), 46 Ohio St. 2d 399, 414, 75 O.O. 2d 474, 482, 350 N.E. 2d 413, 423. The trial court is provided with broad discretion in deciding what is equitable upon the facts and circumstances of each case, but such discretion is not unlimited. *Cherry* v. *Cherry* (1981), 66 Ohio St. 2d 348, 355, 20 O.O. 3d 318, 322, 421 N.E. 2d 1293, 1299. A reviewing court cannot substitute its judgment for that of the trial court unless, considering the totality of the circumstances, the trial court abused its discretion. *Holcomb,* *supra,* at 131, 541 N.E. 2d at 599. As we noted in *Blakemore* v. *Blakemore* (1983), 5 Ohio St. 3d 217, 219, 5 OBR 481, 482, 450 N.E. 2d 1140, 1142, for an abuse of discretion to exist, the court's attitude must be unreasonable, arbitrary or unconscionable and not merely an error of law or judgment.

Accordingly, in this appeal, we must look at the totality of the circumstances and determine whether the trial court acted unreasonably, arbitrarily or unconscionably in awarding sustenance alimony to appellee.

I

Appellant contends that the trial court erred by not providing a termination date as to the sustenance alimony payments. Appellant specifically targets that portion of the initial entry requiring him to continue payments for the life of the appellee unless she remarries or cohabits for more than

six months consecutively,[1] and the language in the second entry making the award unmodifiable "* * * as long as * * * [appellee] continues to be the homemaker for her children as their custodian * * *."

Appellant urges that sustenance alimony is awarded to afford a spouse a reasonable time to become self-supporting, and in the vast majority of cases, including the case *sub judice*, sustenance alimony should be limited to a certain duration.

The court of appeals acknowledged that the modern trend is to limit alimony to a definite period of time, but to do so in this case, said the court, would be a hardship upon appellee. We disagree.

The better approach, we believe, has been recognized in *Koepke* v. *Koepke* (1983), 12 Ohio App. 3d 80, 12 OBR 278, 466 N.E. 2d 570, where the court stated:

"Considering current social and economic conditions, * * * awards of alimony for sustenance and support *should be made terminable upon a date certain in the vast majority of cases wherein both parties have the potential to be self-supporting*. In such cases, an award of alimony *terminable upon a date certain provides both the interim support necessary to the recoverer of the award and certainty in the judgment*." (Emphasis added.) *Id.* at 81, 12 OBR at 279-280, 466 N.E. 2d at 571.

The *Koepke* court further stated that providing a termination date is not legally mandated and, in some situations, it could work a hardship on either the payor or payee. Therefore,

"* * * in cases *involving a marriage of long duration, parties of advanced age, and a homemaker-spouse with little opportunity to develop a career, a trial court may, in the proper exercise of its discretion, award alimony terminable only upon certain contingencies * * *."* (Emphasis added.) *Id.* at 81, 12 OBR at 280, 466 N.E. 2d at 571.

Our review of the record indicates that appellant and appellee were married for eighteen years. At the time of trial, appellee was thirty-seven years old and in good health. Appellee's expert testified that appellee's earning capacity was $15,150 per year. Also at the time of trial, appellee had resumed her college education and estimated she could complete her degree requirements in four or five years. In addition, appellee testified she was in love with a physician. The physician testified he had asked the appellee to marry him.

In Ohio, terminating a marriage is often approached by the courts as a dissolution of a partnership and "[o]nly after a division of property is made, is the court statutorily authorized to consider whether an additional amount is *needed* for sustenance, *and for what period will such necessity persist*.

"Any grant of 'alimony' for sustenance is necessarily co-extensive with the court's determination that it is *needed* and *warranted*. * * *" (Emphasis added.) *Wolfe, supra,* at 414, 75 O.O. 2d at 482, 350 N.E. 2d at 423.

Hence, it follows that a trial court must determine whether there is a need for sustenance alimony, and, if so, the amount needed and the dura-

---

[1] It has been suggested that a literal reading of this provision would permit appellee to cohabit for five months and twenty-nine days, cease cohabitation for a short period and then resume cohabitation and still never be in violation of the court's order. While we do not even suggest that appellee might contemplate such a course of action, nevertheless it must be conceded (at least for argument) that under the trial court's order, such a situation could lawfully exist.

tion of the need. Need is "[a] relative term, the conception of which must, within reasonable limits, vary with the personal situation of the individual employing it. [The] [t]erm means to have an urgent or essential use * * *." Black's Law Dictionary (5 Ed. 1979) 929.

After determining a need exists, the court is then confronted with the often difficult task of determining the duration of the need. The modern trend favors terminating alimony on a date certain. The reason for awarding sustenance alimony payable only to a date certain is that the payee's need requiring support ceases, when, under reasonable circumstances, the payee can become self-supporting. Conversely, if under reasonable circumstances a divorced spouse does not have the resources, ability or *potential* to become self-supporting, then an award of sustenance alimony for life would be proper.

After a thorough review of the record, and in light of appellee's testimony, we find that appellee has the resources, ability and potential to become self-supporting. Furthermore, we find that terminating sustenance alimony on a date certain would not work an undue hardship on appellee. We have concluded that within a reasonable time, and with a reasonable effort on the part of appellee, she can become self-supporting.

Accordingly, we hold that except in cases involving a marriage of long duration, parties of advanced age or a homemaker-spouse with little opportunity to develop meaningful employment outside the home, where a payee spouse has the resources, ability and potential to be self-supporting, an award of sustenance alimony should provide for the termination of the award, within a reasonable time and upon a date certain, in order to place a definitive limit upon the parties' rights and responsibilities.

## II

The initial entry mandated appellant pay appellee "* * * [annual] support alimony a sum equal to thirty-three and one-third percent (33 1/3%) of the payor's gross *earned* income * * * less payor's FICA payments." (Emphasis added.) The fourth entry added that the minimum monthly payment was to be $2,000.

Appellant contends that awarding appellee sustenance alimony for her life based on a fixed percentage of appellant's gross income is contrary to law. Appellant further contends the trial court put undue emphasis on appellant's marital conduct and did not base the award on appellee's need. Therefore, urges appellant, the court's award was unreasonable and an abuse of discretion.

The court of appeals held the trial court did not abuse its discretion and properly considered all relevant factors as set forth in R.C. 3105.18. Furthermore, the appellate court stated that even though R.C. 3105.18 is silent as to marital misconduct, it may be a relevant factor in the court's determination of an alimony award. See *Esteb* v. *Esteb* (1962), 173 Ohio St. 259, 19 O.O. 2d 80, 181 N.E. 2d 462. The court of appeals determined that prior to the appellant's moving out of the home, appellant provided appellee approximately $2,100 per month to operate the family home. By the trial court's awarding appellee 33-1/3 percent of appellant's gross income less FICA, this, according to the court of appeals, provided an amount necessary to operate the family home and pay for appellee's medical expenses, taxes and college tuition for which appellee is now responsible. Thus, continued the court, the percentage of in-

come approach is justified. We do not agree with the conclusion of the court of appeals.

Literally construed, R.C. 3105.18 (A) and (B) provide a trial court with broad discretion in awarding alimony based on the payor's ability to pay and the payee's need. However, this statutory scheme does not allow a court to fine, penalize or reward either party at the time of the divorce decree. See *Campbell* v. *Campbell* (1968), 17 Ohio App. 2d 87, 46 O.O. 2d 101, 244 N.E. 2d 525.

As this court has noted on numerous occasions, "[w]hile we recognize that '* * * [n]either party should make a profit at the expense of the other * * *,' *Cherry, supra,* at 355, 20 O.O. 3d at 322, 421 N.E. 2d at 1299, we do not interpret R.C. 3105.18 to require an alimony award that provides the parties with an equal standard of living or a standard of living equivalent to that established during the marriage. *Sustenance alimony is based on need * * *.*

"* * *

"* * * The goal is to reach an equitable result. The method by which the goal is achieved *cannot be reduced to a mathematical formula. * * *"* (Emphasis added.) *Kaechele, supra,* at 95-96, 518 N.E. 2d at 1200.

In the case at bar, the trial court, as affirmed by the court of appeals, awarded sustenance alimony based on a fixed percentage of appellant's gross income less FICA. However, upon review of the record, and looking at the totality of the circumstances, we find that fashioning an award based on a percentage of appellant's gross income was unreasonable.

Appellee testified that during the marriage she had been able to operate the family home on $2,100 per month and that she was now seeking sustenance alimony of $20,000 per year. Even accepting at face value that, for at least a period of time, appellee was entitled to the amount she sought as her "need," the award based on 33-1/3 percent of appellant's gross income substantially exceeded this amount. In essence, when a sustenance award is not limited to the payee's need, the award has the effect of punishing the payor and rewarding the payee. Further, an award based solely on a percentage of appellant's income, gross or otherwise, does not take into consideration appellee's need or appellant's ability to pay.

There are no reported cases in Ohio which support or prohibit the awarding of a percentage of a payor's income for sustenance alimony. The issue has been decided, however, in other jurisdictions.

In *Jacobs* v. *Jacobs* (1979), 219 Va. 993, 254 S.E. 2d 56, the Virginia Supreme Court reversed an order of a lower court which required "* * * that the defendant pay 25% of all income received by him in any calendar year beginning with 1977 in excess of $32,000 * * *." The court held that alimony awards should not penalize or reward either party but rather should do equity to both parties. A balance, said the court, must be struck and any award made should be upon the basis of the circumstances disclosed by the evidence at the time of the award as judged in light of contemporary conditions. Where an award is premised upon the occurrence of an uncertain future circumstance, such an award defeats the purpose of the statutory scheme.

Much of the same reasoning was used by the appellate court in *McClung* v. *McClung* (Fla. App. 1985), 465 So. 2d 637. In *McClung,* the appellate court reversed an award of alimony granted by a lower court where the lower court ordered permanent ali-

mony in an amount equalling fifty percent of the combined total net incomes of the spouses. The appellate court held that the formula was inequitable because the husband would become obligated to pay an increased amount of alimony if his income increased even if the wife's needs did not increase.

The court said that "* * * [w]e do not favor the use of a formula to determine the amount of alimony for the future when, as here, there is no evidentiary basis for the present determination of relevant future events." *Id.* at 638.

Likewise, in *Roscini* v. *Roscini* (1973), 41 App. Div. 2d 895, 342 N.Y. Supp. 2d 681, the appellate court held that a provision requiring a defendant to pay as additional alimony 12.5 percent of any bonus or additional compensation he may receive in a lump sum should be deleted for the reason that a wife is not entitled to a share of her husband's income as such, nor is there a right to escalation as the husband prospers. Further, held *Roscini*, the court in the future should determine if changed circumstances require a modification, and that it is unwise to make provision for the sharing of a prospective bonus which may never be paid.

These cases, and other cases not cited, are persuasive to us. Even so, we have made our decision based upon the record of the case now before us and what we believe is proper and fair.

In the case at bar, the trial court has fashioned an award that could, and more than likely would, fluctuate monthly. By fashioning such an award, the court merely is guessing what the needs and abilities of appellee and appellant will be. Considering appellant's current employment, it is speculative at best to forecast what his earnings may be from commissions and bonuses. Appellant's earnings are uncertain given the whims of the brokerage business. Moreover, such an award is speculative as to what appellee's needs will be in the future. Therefore, considering the totality of the circumstances, an award based on a percentage of the appellant's income, gross or otherwise, was unreasonable.

Accordingly, absent an agreement between payor and payee spouses, it is improper to include in an award of sustenance alimony a clause requiring the payor to pay alimony based on a fixed percentage of the payor's income, gross or otherwise, when the award is in the form of a penalty or is not based on the payee's need. Further, an award of sustenance alimony must not exceed an amount which is reasonable.

### III

The final issue for disposition is whether the trial court erred in awarding sustenance alimony as a charge against appellant's estate.

We have previously held in *DeMilo* v. *Watson* (1957), 166 Ohio St. 433, 2 O.O. 2d 433, 143 N.E. 2d 707, that "* * * a court granting a divorce may, in the expressly sanctioned exercise of general equity power and jurisdiction and regardless of the 'aggression' of either party, embody in the judgment an order for the payment of alimony in future installments, which order will be operative *according to its terms* against the estate of the party, charged with such payments, after his death." (Emphasis added.)

The payee in *DeMilo* was awarded alimony for a fixed amount and time, to wit: $175 per month for twelve years. After the eighth monthly payment, the payor died. This court permitted the remainder of the payments to be a charge against the payor's estate.

In *Snouffer* v. *Snouffer* (1937), 132

Ohio St. 617, 9 O.O. 14, 9 N.E. 2d 621, we held that:

"Where, upon the granting of a divorce to the wife * * * there is an equitable division of * * * real and personal estate made * * * and the wife is further awarded, as alimony, $100 per month, payments to continue *so long as she remains unmarried, in the absence of contract or statutory provision to the contrary*, such decree * * * *will * * * not embrace periods beyond the death of the husband.*" (Emphasis added.)

In construing our previous decisions, we have concluded that in order for a sustenance alimony award to be a charge against appellant's estate here, the award must be a definite sum that will cease on a date certain.

Accordingly, sustenance alimony awarded in a specific amount for a definite period of time, whether encompassed in an agreement between the payor and payee or decreed by court order, is chargeable against the payor's estate to the extent such award is not fully paid at the death of the payor. Further, an award of sustenance alimony for a fixed period of time and for a definite amount is not rendered indefinite even though the award is made subject to the payee's death, remarriage or cohabitation. See *Ressler* v. *Ressler* (1985), 17 Ohio St. 3d 17, 17 OBR 14, 476 N.E. 2d 1032.

## IV

In reversing the judgment of the court of appeals, and thus that of the trial court, we do so with the foregoing discussion so as to facilitate, upon remand, a redetermination of the alimony issues.[2] In addition, and more specifically, our reason for reversing is that we find the trial court's orders to be, in several respects, internally inconsistent. As examples, we have considered the following.

## A

In the initial entry, the trial court ordered that "* * * as to those matters involving the separate maintenance and support of the plaintiff, Nancy R. Kunkle, that this court maintain continuing jurisdiction." This would appear to give the court continuing authority to modify the order based upon changing circumstances. Yet, within the same entry, the court provided that "* * * [s]aid payments shall continue during the life of the payee, Nancy R. Kunkle, so long as she does not remarry or cohabit with a person of the opposite sex for more than six (6) months continuously *with the happening of either of the latter subjecting said award to modification by the Court.*" (Emphasis added.) The emphasized language would seem to limit the court's power of modification to just two special circumstances, rather than the court's using its "continuing jurisdiction" to monitor the award in all respects.

## B

In a later entry, the "third entry," the court, without changing the "continuing jurisdiction" language of the initial entry, inserted into the order a further limitation on modification of the order "* * * upon hearing as to the facts that then exist including whether or not plaintiff is maintaining a home for *any* of the children." (Emphasis added.) In addition, the court in its "second entry" ordered that "* * * as long as the plaintiff continues to be the homemaker for her children as their custodian, said award should continue *unmodified * * *.*" (Emphasis added.)

---

[2] Our remand for a further determination of alimony issues does not, of course, foreclose concurrent further consideration of the child support award.

Taken together, these entries could be read to allow the alimony award to be unmodifiable even if the appellee remarried or cohabited for more than six months, so long as she was maintaining a home for *any* of the children (emancipated by age or not) or so long as she continued to be the "homemaker for her children." Such an interpretation would clearly negate the "need" factor.

### C

In the trial court's initial entry, the percentage used to determine the amount of alimony payable was to be applied to appellant's gross *earned* income. In a later entry, the court made the sustenance alimony a charge, after appellant's death, against his estate. The court did so having conceded earlier in the entry that "[t]he court can find no authority, unless by agreement of the parties, for judicial action charging defendant's estate and/or insurance with support of his minor children after his death. The Court, however, finds it is reasonable under the facts of this case that such protection be made available to the plaintiff *as well as permitting the sustenance alimony to be a charge against the defendant's estate.*" (Emphasis added.)

The confusion arises because it is obvious that appellant would not be receiving "earned" income after his death. If the percentage and/or the $2,000 minimum is based upon *earned* income, there would be no such income to support the award.

### V

We are not unmindful that we are setting forth guidelines which involve serious policy considerations, but it has become increasingly obvious, as our courts struggle with these difficult problems, that there is a need for this court to give guidance and direction, as best we can, to the bench and bar of this state in this admittedly elusive area of the law.

We are also not unmindful that the trial judge and the court of appeals struggled, as have we, with the issues presented by this case. They did not have the benefit of the guidelines we announce today. Under the circumstances, their efforts should be commended.

Further, we are aware that our decision today will not receive universal approbation. This is expected and understandable. It is our hope and expectation that as courts at all levels deal with these ever-increasing problems in our changing society, we will reach some consensus that can and will be generally accepted.

### VI

In summary, we reverse the judgment of the court of appeals as it pertains to the question of alimony. We remand this cause and these issues to the trial court with instructions to award appellee sustenance alimony in a definite amount for a specific and reasonable period of time based upon appellant's ability to pay and appellee's need, taking into consideration the length of the marriage and appellee's resources, ability and potential to become self-supporting. Such an order may include, of course, a provision that any ascertainable unpaid sums still due at appellant's death may be a charge against his estate.

*Judgment reversed*
*and cause remanded.*

MOYER, C.J., SWEENEY, HOLMES and H. BROWN, JJ., concur.

WRIGHT and RESNICK, JJ., dissent.

ALICE ROBIE RESNICK, J., dissenting. I dissent from the majority's

holding in paragraph one of the syllabus because it unnecessarily restricts a trial court's discretion to award permanent alimony. In addition I dissent from the majority's application of syllabus two to the facts of this case. However, I agree that in a charge against the payor spouse's estate, the sum must be definite or cease on a date certain. Thus, because the amount of alimony awarded in this case is not for a definite amount or for a fixed period of time, it is not permissible to make it a charge against the appellant's estate.

This court has stated numerous times that a trial court has broad discretion in determining the division of marital assets and liabilities and the award of sustenance alimony. "After a divorce has been granted, the trial court is required to equitably divide and distribute the marital estate between the parties and thereafter consider whether an award of sustenance alimony would be appropriate. *Teeter* v. *Teeter* (1985), 18 Ohio St. 3d 76, 18 OBR 106, 479 N.E. 2d 890, citing *Wolfe* v. *Wolfe* (1976), 46 Ohio St. 2d 399, 75 O.O. 2d 474, 350 N.E. 2d 413. The trial court is vested with broad discretion in determining the appropriate scope of these property awards. *Berish* v. *Berish* (1982), 69 Ohio St. 2d 318, 23 O.O. 3d 296, 432 N.E. 2d 183. Although its discretion is not unlimited, it has authority to do what is equitable. *Cherry* v. *Cherry* (1981), 66 Ohio St. 2d 348, 355, 20 O.O. 3d 318, 322, 421 N.E. 2d 1293, 1298. A reviewing court should measure the trial court's adherence to the test, but should not substitute its judgment for that of the trier of fact unless, considering the totality of the circumstances, it finds that the court abused its discretion. Section 3(B), Article IV of the Ohio Constitution; App. R. 12; *Briganti* v. *Briganti* (1984), 9 Ohio St. 3d 220, 222, 9 OBR 529, 531, 459 N.E. 2d 896, 898; *Kaechele* v. *Kaechele* (1988), 35 Ohio St. 3d 93, 94, 518 N.E. 2d 1197, 1199. 'The term "abuse of discretion" connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable.' *Blakemore* v. *Blakemore* (1983), 5 Ohio St. 3d 217, 219, 5 OBR 481, 482, 450 N.E. 2d 1140, 1142." *Holcomb* v. *Holcomb* (1989), 44 Ohio St. 3d 128, 130-131, 541 N.E. 2d 597, 599.

Alimony in Ohio may consist of both a division of marital assets and liabilities and periodic payments for sustenance and support. See *Kaechele* v. *Kaechele* (1988), 35 Ohio St. 3d 93, 95, 518 N.E. 2d 1197, 1200. R.C. 3105.18(A) gives broad discretion to the trial court to award alimony to either party:

"In divorce, dissolution of marriage, or alimony proceedings, the court of common pleas *may allow* alimony it considers reasonable to either party:

"The alimony *may be allowed* in real or personal property, or both, or by decreeing a sum of money, payable either in gross or in installments, *as the court considers equitable.*" (Emphasis added.)

Although the trial court has *discretion* in determining the *nature, amount, and manner* of payment of alimony, R.C. 3105.18(B) sets forth relevant factors the court must consider in its determination. These factors include but are not limited to:

"(1) The relative earning abilities of the parties;

"(2) The ages, and the physical and emotional conditions of the parties;

"(3) The retirement benefits of the parties;

"(4) The expectancies and inheritances of the parties;

"(5) The duration of the marriage;

"(6) The extent to which it would

be inappropriate for a party, because he will be custodian of a minor child of the marriage, to seek employment outside the home;

"(7) The standard of living of the parties established during the marriage;

"(8) The relative extent of education of the parties;

"(9) The relative assets and liabilities of the parties;

"(10) The property brought to the marriage by either party;

"(11) The contribution of a spouse as a homemaker."

The majority in arriving at its decision seems to focus on only a few of these factors, such as relative earning abilities of both parties, appellee's age at the time of the divorce, and the extent of appellee's anticipated educational attainments. The majority, however, overlooks several important factors which the trial court must take into consideration, such as the duration of the marriage, the inappropriateness of appellee working outside of the home until her youngest child reaches the age of eighteen, and the standard of living established by the parties during their marriage. As we stated in *Kaechele, supra*, at 96, 518 N.E. 2d at 1200, "* * * all the statutory factors [enumerated in R.C. 3105.18 (B)] must be considered. The goal is to reach an equitable result. The method by which the goal is achieved cannot be reduced to a mathematical formula. Therefore, we hold that in making a sustenance alimony determination, the court must consider all the factors listed in R.C. 3105.18(B) and not base its determination upon any one of those factors taken in isolation."

The majority states, "we find appellee has the resources, ability and potential to become self-supporting. * * * [T]erminating sustenance alimony on a date certain would not work an undue hardship on appellee." The record simply does not support this assertion. On the contrary, the record supports the trial court's determination that appellee demonstrated a *need* for permanent alimony under the circumstances of this case. The record shows that the marriage of appellee and appellant lasted for eighteen years. Appellee, at the request of her husband, did not hold a job outside the home during those eighteen years. Appellee, at the time of her marriage in 1967, was a sophomore at Miami University, where she was majoring in elementary education. She completed only three semesters, or one and one-half years, before quitting college in order to stay at home and be a housewife and mother. At the time of the trial for divorce, appellee was enrolled in Findlay College and was studying business administration. Appellee has little, if any, marketable experience in her chosen field of study. See *In re Marriage of Morrison* (1978), 20 Cal. 3d 437, 453-454, 143 Cal. Rptr. 139, 150, 573 P. 2d 41, 52, and *Brueggemann* v. *Brueggemann* (Mo. App. 1977), 551 S.W. 2d 853. Because of appellee's child-rearing and homemaking responsibilities, appellee anticipated graduating in four to five years. Appellee testified that she was planning on entering the workforce when her youngest child reached eighteen years of age. This child will be eighteen in the year 1996. Thus, appellee, who was born in 1948, will be seeking to enter the workforce for the first time in over twenty-nine years at the age of forty-eight. It will be very difficult, if not impossible in today's job market, for appellee to obtain employment which will allow her the opportunity to become financially independent. In addition, at that age she will only have approximately seventeen years to create any type of financial security for her retirement years. Based upon the holding today, appellee would be required to

leave her minor child at home to pursue employment, something which she was not required to do during the marriage. In fact, her husband encouraged her to stay home and be a homemaker forgoing any opportunity to develop work skills.

The majority finds that the trial court abused its discretion. The reasoning of the court in *Canakaris* v. *Canakaris* (Fla. 1980), 382 So. 2d 1197, 1203, is appropriate: "We cite with favor the following statement of the test for review of a judge's discretionary power: 'Discretion, in this sense, is abused when the judicial action is arbitrary, fanciful, or unreasonable, which is another way of saying that discretion is abused only where no reasonable man would take the view adopted by the trial court. If reasonable men could differ as to the propriety of the action taken by the trial court, then it cannot be said that the trial court abused its discretion.' *Delno* v. *Market Street Railway Company* 124 F. 2d 965, 967 (9th Cir. 1942)."

The trial court in the instant case did not abuse its discretion in determining that permanent alimony was proper. The majority states that the "modern trend favors terminating alimony on a certain date." Such a bald statement ignores the fact that each divorce is unique, requiring the trial court to look at all pertinent factors before awarding alimony. "Sustenance alimony is based on need, and the trial court must have latitude to examine all the evidence before it awards an amount that is reasonable and equitable to both parties." *Kaechele, supra,* at 95, 518 N.E. 2d at 1200. To imply that permanent alimony is inappropriate or that there is a trend away from it is totally misleading to the trial courts. These are very difficult situations, specifically where the husband has encouraged his wife to leave college and ultimately the workforce in order to devote full time to being a homemaker. At the time of divorce the husband's earning capabilities were not affected, but without permanent alimony after a marriage of eighteen years the appellee will be forced to live at a much lower standard of living. In reality a homemaker is being penalized for forgoing her education and career in order to devote her time exclusively to her husband and children. "A major University of Michigan study found that seven years after a divorce, the real purchasing power of men's income in relation to a standardized index of family need *improved* by 17%, while the real purchasing power of women's income in relation to need *declined* by 7%. Moreover, this disparity is probably understated, because the study included a wider range of paid services among the 'needs' for men than for women. Lenore Weitzman's more recent California study found that a year after divorce, men's standard of living rose by 42%, while women's standard of living dropped by 73%. Every other study of standards of living following divorce has also demonstrated that men's standard of living rises, while women's falls." (Emphasis *sic*; footnotes omitted.) Goldfarb, Marital Partnership and the Case for Permanent Alimony (1989), 27 J. Family L. 351, 361.

Recent case law from other jurisdictions shows that alimony, whether permanent or indefinite, can be awarded where the circumstances warrant it. See *In re Marriage of Kristie* (1987), 156 Ill. App. 3d 821, 510 N.E. 2d 14 (permanent maintenance appropriate where spouse is employed but has little prospect of earning an income to meet her needs); *Womble* v. *Womble* (Fla. App. 1988), 521 So. 2d 149 (permanent alimony award appropriate where wife had only high school education, worked as a full-time

homemaker for twenty years, and in 1980 earned $4.00 per hour, with no prospect for advancement or increased earnings. Court held two primary elements to consider in making permanent alimony award are needs of the payee spouse and ability of payor spouse to provide the funds); *Perreault* v. *Perreault* (R.I. 1988), 540 A. 2d 27 (even though the court in the past construed alimony to be rehabilitative in nature, nothing precluded a trial court from awarding open-ended alimony award to wife where marriage was of long duration, wife's health was poor, and wife lacked marketable skills); *Mundy* v. *Mundy* (Fla. App. 1986), 498 So. 2d 538 (rehabilitative alimony inappropriate where marriage was of relatively long duration and where recipient spouse had been homemaker for most of the marriage, had no present capacity for self-support, and had care of minor child); *Teribery* v. *Teribery* (1986), 357 Pa. Super. 384, 516 A. 2d 33 (permanent alimony award to wife at rate of fifty percent of husband's net income not an abuse of discretion in light of parties' incomes, earning capacities, ages, health, education, standard of living, assets, and needs, and where amount could be modified upon certain contingencies or changed circumstances); *Tate* v. *Tate* (S.D. 1986), 394 N.W. 2d 309 (award of alimony to wife until her remarriage not an abuse of discretion where wife's role during twenty-year marriage was of wife, mother, and homemaker, wife had only high school degree with no other job training, and her most recent job paid $4.00 per hour); *Stephens* v. *Stephens* (Utah 1986), 728 P. 2d 991 (award of alimony to wife which was payable until wife's remarriage or husband's retirement not an abuse of discretion where wife, who was in her forties, did not pursue a career during a sixteen-year marriage, had few marketable skills, earned one-third of her husband's salary, and had little chance of increasing salary without further education).

The majority limits an award of permanent alimony to those situations where the marriage is of long duration, or where the parties are of advanced age, where the homemaker spouse had little opportunity to develop meaningful employment outside the home, or where the payee spouse lacks the resources, ability, and potential to be self-supporting. Such a holding improperly restricts the discretion granted to the trial court to make alimony awards as it perceives the facts. R.C. 3105.18 mandates that the trial court consider all relevant factors. While the factors enumerated by the majority certainly are important, they are not the only criteria for awarding alimony.

Lastly, I take exception to the majority's holding that awarding a percentage of appellant's income to appellee was not only unreasonable but a penalty. Some jurisdictions have indeed found percentage awards inappropriate, but other jurisdictions have approved them. See Annotation (1977), 75 A.L.R. 3d 493. Each case must be determined on its own facts and in some instances only an award of a percentage of income will be equitable.

The court in *Condy* v. *Condy* (1946), 328 Ill. App. 8, 65 N.E. 2d 219, upheld a provision in divorce decree directing the husband to pay to the wife as alimony " 'one-half of his salary earned and received as a teacher or employee of the public schools of the City of Chicago, Illinois, so long as he is so employed, and in the event of the termination of such employment, to pay one-half of his gross income. * * *'. * * *" *Id.* at 9, 65 N.E. 2d at 220. *Dunning* v. *Dunning* (1985), 104 N.M. 296, 301, 720 P. 2d 1237, 1242, upheld "the use of percen-

tage alimony awards when appropriate safeguards are taken to insure that consideration is given to needs of the receiving spouse, as well as the ability of the paying spouse to pay the amount awarded." Additionally, the court in *In re Marriage of Hellwig* (1981), 100 Ill. App. 3d 452, 426 N.E. 2d 1087, took a realistic approach when discussing a maintenance award by stating the policy favoring rehabilitative alimony for a limited time "must be balanced against a realistic appraisal of the likelihood that the spouse will be able to support herself in some reasonable approximation of the standard of living established during the marriage, especially where the marriage is of long duration and the spouse has had a long term absencé from the labor market. * * *" *Id.* at 464-465, 426 N.E. 2d at 1096. The court stated that "the 40 percent award does not appear excessive." *Id.* at 466, 426 N.E. 2d at 1097. The court in *In re Marriage of Stegbauer* (1980), 84 Ill. App. 3d 83, 86, 404 N.E. 2d 1140, 1142, stated that "[t]he advantage of a percentage award is that it is self-adjusting, obviating the section 510 petition for modification in case the respondent's income is reduced." Percentage awards have also been recognized by legal commentators. See, generally, 24 American Jurisprudence 2d (1983) 649, Divorce and Separation, Section 654. Percentage awards are not *per se* improper and an abuse of the trial judge's discretion.

There is no support in the record for the conclusion that the trial court was penalizing the appellant by entering the percentage award. "The realities of divorced women's economic condition[s] dictate that permanent alimony awards should be made available to equalize the postdivorce standards of living of the parties. Otherwise, women will be penalized for

living according to the principles that marriage is a partnership and that homemaking duties are a valuable and important marital contribution. If alimony law is allowed to embody penalties for homemaking, it will be incumbent upon us 'to reclassify the traditional all-American concept of Mom and apple pie and re-label it a most hazardous occupation that all young girls should be dissuaded from.' *McAllister* v. *McAllister*, 345 So. 2d 352, 355 (Fla. Dist. Ct. App. 1977)." Journal of Family Law, *supra*, at 372.

For the foregoing reasons, I believe that the trial court had before it sufficient evidence to support an award of permanent alimony to appellee and did not abuse its discretion in making such an award. "In reviewing a true discretionary act, the appellate court must fully recognize the superior vantage point of the trial judge and should apply the 'reasonableness' test to determine whether the trial judge abused his discretion. If reasonable men could differ as to the propriety of the action taken by the trial court, then the action · is not unreasonable and there can be no finding of an abuse of discretion. The discretionary ruling of the trial judge should be disturbed only when his decision fails to satisfy this test of reasonableness." *Canakaris*, *supra*, at 1203. By doing otherwise, an appellate court would be simply substituting its judgment for that of the trial judge.

In the instant case the decision of the trial judge has met this test for reasonableness and should not be disturbed. For these reasons, I would affirm the decision of the court of appeals except for making the award of alimony a charge against the estate of the appellant.

WRIGHT, J., concurs in the foregoing dissenting opinion.