OPINION
This is an appeal from a decision of the Butler County Court of Common Pleas, Domestic Relations Division, in which plaintiff-appellant, Robert Sirk, was granted a divorce from defendant-appellee, Linda Sirk.
The parties were married on December 4, 1971. Two children were born of the marriage, Gretchen, born in 1976 and now emancipated, and Ellen, born May 11, 1980. Appellant is self-employed as a real estate broker. He also works part-time for his father's corporation and has investments in a real estate partnership. Before the parties' separation in May of 1995, appellee had worked for the Hamilton City Schools for two years. Appellee was employed at the Dublin City Schools at the time of the 1996 divorce hearing as a public relations officer. Appellee had also held part-time positions at a day care center and at appellant's brokerage firm. During most of the marriage, however, appellee was not employed outside the home.
The parties' elder daughter Gretchen attended a private boarding school in Massachusetts for three years. That educational expense of $18,000 per year was borne by appellant. Appellant also incurred expenses for Gretchen's college education. These expenses were largely financed through parental loans.
During the marriage, appellee inherited approximately $171,000 from her mother. Some of this inheritance money was spent on improvements to the parties' marital home on Emerson Avenue (the "Emerson residence") in Hamilton. That home had been deeded to the parties by appellant's father as a gift. In June of 1988, the parties purchased a second home on Dick Avenue (the "Dick residence") in Hamilton. Some inheritance money was spent for the down payment on the Dick residence, as the Emerson residence was not sold until September 1988. Inheritance money was also spent on improvements to the Dick residence. The Dick residence was sold in 1996 and the parties agreed to a division of the equity. Appellee testified that inheritance money was also spent on vehicles for herself and appellant. Finally, appellant testified that he had spent the final $40,000 of appellee's inheritance prior to their separation on marital expenses.
On October 31, 1995, appellant filed his complaint for divorce in the trial court. The parties agreed to certain property division and custody matters. The trial court heard testimony on disputed matters related to appellant's income, appellant's need for spousal support, and the division of the parties' marital debts. The hearing was held on October 16, 1996 and concluded on October 28, 1996. The trial court filed its decision on February 19, 1997 and its judgment entry and decree of divorce on September 7, 1997.
The court found that appellee earned $72,000 per year at her current position and appellant earned approximately $60,000 per year. The court calculated appellant's income as follows: $40,000 from his real estate brokerage firm, Sirk Realty; partnership real estate income of approximately $3,000; and employment income of approximately $18,000 per year from Kris, Inc., appellant's father's corporation.
The court found that the "substantial debt" incurred by appellant for Gretchen's college and high school education was marital in nature and determined that those debts and certain credit card debt should be divided sixty percent to appellant and forty percent to appellee.
The court determined that neither party was entitled to spousal support as both parties had the likelihood of making significant income in the future. The court noted that although appellant had health problems, there was no medical evidence that those problems would make him less likely to earn a living as a real estate broker.
The trial court designated appellee as the residential parent of the minor child, Ellen, and ordered appellant to pay child support in the amount of $120 per week.
Appellant timely filed this appeal and raises the following three assignments of error:
Assignment of Error No. 1:
 The trial court erred to the prejudice of plaintiff-appellant when it denied spousal support to him.
Assignment of Error No. 2:
 The trial court erred to the prejudice of plaintiff-appellant when it ordered him to pay sixty percent of the marital debt.
Assignment of Error No. 3:
 The trial court erred to the prejudice of plaintiff appellant in its calculation of child support.
In his first assignment of error, appellant argues that the trial court erred in denying him spousal support. Appellant specifically claims that his brokerage firm income was calculated by the court incorrectly and that it was improper for the court to consider that appellee's inheritance had been spent for marital purposes during the marriage. Appellant also claims that the court improperly considered that appellant may inherit a large sum from his father in the future.
A trial court has broad discretion in determining whether spousal support is "appropriate and reasonable." Kunkle v. Kunkle (1990), 51 Ohio St.3d 64. An award of spousal support will not be reversed by an appellate court unless, considering the totality of the circumstances, the reviewing court finds that the trial court abused its discretion. An abuse of discretion is more than an error of law or judgment, it constitutes an attitude on the part of the trial court which is unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217,219.
R.C. 3105.18(C)(1) lists the factors that a trial court must consider when determining the amount of spousal support. These factors are as follows:
 (a) The income of the parties, from all sources, including, but not limited to, income derived from property divided, disbursed, or distributed under section 3105.171 of the Revised Code;
(b) The relative earning abilities of the parties;
 (c) The ages and the physical, mental, and emotional conditions of the parties;
(d) The retirement benefits of the parties;
(e) The duration of the marriage;
 (f) The extent to which it would be inappropriate for a party; because he will be custodian of a minor child of the marriage, to seek employment outside the home;
 (g) The standard of living of the parties established during the marriage;
 (h) The relative extent of education of the parties;
 (i) The relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties;
 (j) The contribution of each party to the education, training, or earning ability of the other party, including but not limited to, any party's contribution to the acquisition of a professional degree of the other party;
 (k) the time and expense necessary for the spouse who is seeking spousal support to acquire education, training, or job experience so that the spouse will be qualified to obtain appropriate employment, provided the education, training, or job experience, and employment is, in fact, sought;
 (l) The tax consequences, for each party, of an award of spousal support;
 (m) The lost income production capacity of either party that resulted from that party's marital responsibilities;
 (n) Any other factor that the court expressly finds to be relevant and equitable.
Based on the record in the case at bar, the salient factors were the relative income, and perhaps the health of the parties. Both parties were fifty years of age at the time of the hearing and had roughly equivalent education. Although appellee had been primarily a homemaker during much of the marriage, her most recent employment was highly paid. She testified, though, that she was not assured of the continuation of that employment. Appellee also testified that she and the parties' younger daughter were living frugally in a one-bedroom apartment.
In support of his request for spousal support, appellant testified that his health problems, including rheumatoid arthritis and pituitary cancer in remission, were interfering somewhat with his ability to show houses or appraise large properties. However, appellant admitted that his health did not prevent him from earning commission income from the sales of approximately fourteen agents working in his brokerage firm. Appellant introduced tax returns for three years showing income from his brokerage firm of $38,130 for 1993, $35,380 for 1994, and $16,922 for 1995. Appellant argues that his income from his brokerage firm has averaged approximately $30,000 during the previous three years and that the trial court incorrectly set that income at $40,000. However, at trial appellant acknowledged that in a deposition, he had agreed to an estimate of $40,000 per year as his approximate annual income from his brokerage firm. Appellant does not contest the trial court's findings on his other income sources.
Appellant also argues that the trial court incorrectly considered that appellee's inheritance had been spent during the course of the marriage. The trial court did briefly mention this matter, stating that "[i]n making no spousal support award in this case, the Court looks at the inheritance of the Defendant that has been spent for marital purposes." However our thorough review of the record reveals that the trial court's reference to appellee's inheritance was primarily included in the court's determination of the parties' property division. A thorough review of the record also reveals that the trial court heard testimony on and carefully considered all relevant factors set forth in R.C.3105.18, including inter alia, the parties' health, income, and education in making its determination. In light of the foregoing, we find that the trial court correctly calculated the parties' income. The trial court also correctly found that no medical evidence had been presented in support of appellant's request for spousal support.
After viewing the record, we find that the trial court's decision refusing to award spousal support to appellant is not so arbitrary, unreasonable, or unconscionable as to connote an abuse of discretion. Appellant's first assignment of error is therefore overruled.
In his second assignment of error, appellant argues that the trial court erred when it ordered him to pay sixty percent of the marital debt. Appellant specifically claims that it was improper for the court to consider the parties' respective inheritances in making this determination.
A trial court has broad discretion to determine what division of assets and liabilities is equitable in a divorce proceeding. Kaechele v. Kaechele (1988), 35 Ohio St.3d 93. Although a potentially equal division should be the starting point, a property division need not be equal to be equitable, and an unequal property division, standing alone, is not an abuse of discretion. Cherry v. Cherry (1981), 66 Ohio St.2d 348. In making its division of assets and liabilities, the court must consider the eight specific factors listed in R.C. 3105.171(F). Pursuant to R.C. 3105.171(F)(9), the court may also consider "any other factor that the court expressly finds to be relevant and equitable." In considering appellant's inheritance expectancy, the trial court noted that "[w]hile Mr. Sirk has not yet inherited money, there is the distinct possibility that he could inherit a very large amount of money."
R.C. 3105.171(A)(3)(a)(ii) provides that each party's interest in real or personal property acquired during the marriage, subject to certain exceptions for "separate property," is "marital property." In accordance with R.C. 3105.171(B)-(C), such property is to be equally divided between the spouses or equitably divided in accordance with the factors set forth in R.C. 3105.171(F). A potential future interest in an unrealized inheritance is not specifically set forth in R.C. 3105.171(F) as a factor to be considered by the trial court in making a division of marital property. However, it may be considered by the trial court if it determines the potential inheritance to be a relevant and equitable factor. See R.C. 3105.171(F)(9). See, also, Johnson v. Johnson (June 14, 1996), Trumbull App. No. 95-T-5212, unreported; Cyrus v. Cyrus (Nov. 29, 1995), Lorain App. No 95-CA-6040, unreported (holding that the legislature's elimination of "expectancies and inheritances of the parties" as a factor which must be considered did not prohibit the court from considering any relevant and equitable factor).
Under the circumstances presented here, the trial court was within its discretion in considering the disposition of appellee's inheritance and appellant's potential inheritance as relevant and equitable factors. According to their testimony, the parties were in essential agreement that appellee's inheritance had been largely spent for marital purposes, such as improvements to the Emerson residence, down payment and improvements on the Dick residence, and vehicles for both parties. It was also undisputed that all of appellee's inheritance money was spent before the parties separated. With regard to appellant's potential inheritance, appellant testified that his father owns ninety-one rental properties and earns at least $7,700 per month from his corporation, Kris, Inc.[1] Appellant further testified that his father has a stock portfolio and homes in Ohio and Florida. Appellant and his sister are his father's sole heirs and his father is eighty years old.
Upon considering the property division in its entirety, we find that the trial court's allocation of the parties' liabilities was not so unreasonable, arbitrary, or unconscionable as to connote an abuse of discretion. Appellant's second assignment of error is therefore overruled.
In his third assignment of error, appellant argues that the trial court erred in its calculation of child support. Under this assignment of error, appellant merely repeats his earlier assertion that the trial court erred in calculating his income from his brokerage firm. Appellant contends that this resulted in prejudice to him with respect to the child support ordered. We have already determined that there was no abuse of discretion in the trial court's calculation of appellant's income. We therefore find that the trial court did not err in its calculation of the child support. Appellant's third assignment of error is overruled.
Judgment affirmed.
YOUNG, P.J., and WALSH, J., concur.
[1] Pursuant to his testimony, this corporation also pays appellant and his sister $1,500 per month.