OPINION
Plaintiff-appellant, Diane Peterson, appeals a decision by the Butler County Court of Common Pleas, Domestic Relations Division, finding stock options granted to defendant-appellee, Steven C. Peterson, subsequent to the termination of their marriage to be separate property. We affirm the decision of the trial court.
For purposes of distributing appellee's stock options, the trial court, in a judgment entry and decree of divorce, found the duration of the parties' marriage to be from October 22, 1977 until May 17, 1995. Appellee, an employee of the Miller Brewing Company, a subsidiary of Philip Morris, received stock options as a benefit of his employment. The details of the stock option program are contained in "The Philip Morris 1992 Incentive Compensation and Stock Option Plan" (the "stock option agreement.") On May 2, 1997, appellant filed a motion to set off certain stock options. The motion alleged appellant was entitled to her marital share of stock options appellee received in June 1995 and June 1996. On June 27, 1995, appellee received three thousand three hundred thirty shares. On June 25, 1996, appellee received two thousand four hundred shares. Appellant argued that, although appellee was not eligible to receive the stock options until after their marriage had been terminated, the stock options were performance-based and earned during the marriage. Accordingly, appellant claimed that the stock options were marital property.
The trial court conducted a hearing on August 19, 1998. After considering counsel's arguments and the parties' stipulated exhibits, the trial court found the stock options were not based on past performance and, therefore, were the separate property of appellee. From this decision, appellant filed a timely notice of appeal and presents one assignment of error for our review:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF PLAINTIFF-APPELLANT WHEN IT REFUSED TO DIVIDE APPELLEE'S STOCK OPTIONS.
In Demo v. Demo (1995), 101 Ohio App.3d 383, this court was faced with the same legal question as in this case, the extent to which stock options are marital or separate property. In Demo, the husband received stock options during the beginning of the parties' marriage. Id. at 387. However, the options were based on "job performance prior to the marriage." Id. In addition, the husband did not "exercise the option" during the marriage. Id.
Therefore, since the stock options were not earned during the marriage and/or commingled with marital property, the options were found to be the separate property of the husband. Id.
In this case, the parties do not dispute that the stock options received by appellee in June 1995 and June 1996 were subsequent to the termination date of the marriage. However, appellant argues that stock options were based on past performance which occurred during the marriage. A trial court has broad discretion in dividing property equitably. Kunkle v. Kunkle
(1990), 51 Ohio St.3d 64, 67. A trial court's division of property cannot be reversed on appeal unless the division constitutes an abuse of discretion. Cherry v. Cherry (1981),66 Ohio St.2d 348, 355. An abuse of discretion means the decision of the trial court was unreasonable, arbitrary or unconscionable.Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
Appellant points to a June 28, 1994 letter from Philip Morris to appellee which indicates a restricted stock award was based on performance in the year 1993. However, the exhibits show that the Philip Morris Restricted Stock Plan is separate from the stock option agreement. A June 14, 1998 letter from Miller Brewing Company to appellant's counsel indicates the stock option agreement is not performance-based. More importantly, "Section 1" of the stock option agreement states that "[t]he purpose of the Plan is to give the Company a significant advantage in attracting,retaining, and motivating key employees and to provide the Company with the ability to provide incentives more directly linked to the profitability of the Company's businesses and increases in stockholder value." (Emphasis added.) A fair reading of the purpose of the stock option plan reveals that its purpose is to keep, recruit and/or generally motivate employees of Philip Morris, and is not necessarily based upon employee performance during an option period.
Under the stock option agreement, an employee, under certain circumstances, can receive an option after his employment ends for the reason of death, disability or retirement. Appellant argues that these provisions show the stock options appellee received were performance-based and not simply a motivation for continuing employment with Philip Morris. However, we do not believe these provisions of the stock option agreement prove the options are performance-based, but address common, but particularized, occurrences during any employee's option period. The general rule, as written in the stock option plan, is that employees who leave Philip Morris before stock options are granted are not eligible to receive stock options.
Appellant also points to the fact that the stock options are "Non-Qualified Stock Option[s]." Section 1(o) of the stock option agreement defines "nonqualified stock option" as "any Stock Option that is not an Incentive Stock Option." Therefore, appellant claims the stock options must be considered performance-based and not an incentive for continued employment with Philip Morris. An "Incentive Stock Option" is defined as any stock option designated an incentive stock option by Section 422 of the Internal Revenue Code. A nonqualified stock option represents an option which does not qualify for certain federal tax treatment under the criteria of Section 422, Title 26, U.S. Code and does not prove the stock options at issue were performance-based. The trial court's decision that the stock options appellee received in June 1995 and June 1996 were not performance-based was supported by the record and, therefore, within its discretion. The assignment of error is overruled.
Judgment affirmed.
YOUNG and WALSH, JJ., concur.