## Bevens v. Bevens
### [Cite as 6 AOA 171]

*Case No. L-89-145*
*Lucas County, (6th)*
*Decided August 10, 1990*

*Robin M. Kennedy, for appellant.*

*John L. Straub, for appellee.*

This case is on appeal from a judgment of the Lucas County Court of Common Pleas, Domestic Relations Division.

The facts of this case are as follows. On November 13, 1987, appellee, Thomas E. Bevens, Sr., filed for divorce against appellant, Marilyn A. Bevens, following a marriage of thirty-four years. Due to Marilyn Bevens' history of mental illness, she was appointed a guardian ad litem for purposes of the divorce proceedings.

On March 13, 1989, the trial court entered a final judgment of divorce and ordered a division of property. The order essentially provided for an equal distribution of the couple's personal property and debts of the marriage. Also included in such order was an award to Marilyn Bevens of $100 per week in sustenance alimony and an award of fifty percent of her husband's pension benefit. In addition, an award of the marital home worth $52,000 was made to Thomas Bevens with a judgment of $26,000 to Marilyn Bevens (or alternatively one-half the net proceeds of the sale in the event Thomas Bevens should decide to sell the home).

At the time of the divorce, Marilyn Bevens was fifty-two years old, unemployed and was being provided food and shelter by a friend. She has a history of mental illness necessitating a recent hospitalization for six and one-half months and residence in a group home for approximately one year; presently, she is under the care of a psychiatrist. Marilyn Bevens had not previously worked outside of the home for the past fifteen years, with the exception of some sporadic employment, and is presently incapable of obtaining any employment.

Also at the time of the divorce, Thomas Bevens was fifty-three years old and employed by the Libbey-Owens-Ford Company earning $26,000 annually.

It is from the trial court's March 13, 1989 order that Marilyn Bevens raises the following two assignments of error:

1. THE TRIAL COURT'S ALIMONY AWARD TO THE WIFE OF $100 PER WEEK AMOUNTED TO AN ABUSE OF DISCRETION.

2. THE TRIAL COURT'S AWARD OF THE MARITAL HOME TO THE HUSBAND CONSTITUTES AN ABUSE OF DISCRETION.

As her first assignment of error, Marilyn Bevens argues the trial court erred in determining the amount of sustenance alimony.

After a divorce has been granted and an equitable division of the marital property has been effected, a trial court may consider whether sustenance alimony is necessary and determine the nature, amount and manner of any alimony payments. R.C. 3105.18(A); *Wolfe v. Wolfe* (1976),

46 Ohio St. 2d 399, 414. The trial court is provided with broad discretion in determining an amount of alimony, based on *need*, which is equitable and reasonable to both parties. *Kaechele v. Kaechele* (1988), 35 Ohio St. 3d 93, 95. However, that discretion is not unlimited. *Kunkle v. Kunkle* (1990), 51 Ohio St. 3d 64, 67, citing *Cherry v. Cherry* (1981), 66 Ohio St. 2d 348, 355. A reviewing court can substitute its judgment for that of the trial court when, considering the totality of the circumstances, the trial court abused its discretion. *Holcomb v. Holcomb* (1989), 44 Ohio St. 3d 128, 131. An abuse of discretion exists when the lower court's attitude, in reaching its decision, is unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore* (1984), 5 Ohio St. 3d 217, 219.

Marilyn Bevens contends that, in consideration of the relevant factors delineated in R.C. 3105.18(B),[1] the trial court's award of sustenance alimony in the amount of $100 per week is inequitable and, therefore, constitutes an abuse of discretion.

A review of the facts of this case as they relate to the relevant factors compels this court to conclude that the trial court abused its discretion in setting the amount of the sustenance alimony award. The record demonstrates the following pertinent facts.

Thomas and Marilyn were married for approximately thirty-five years and raised two children. Marilyn Bevens was fifty-two years old at the time of the divorce and Thomas Bevens was fifty-three. Marilyn Bevens had, at some point during the marriage been employed as a secretary, but for most of that thirty-five years had worked in the home caring for her husband and children. At the time of the divorce, she was unemployed and, due to her mental and emotional problems, would not be employed in the foreseeable future, if ever. Thomas Bevens had been employed at Libbey-Owens-Ford Glass Co. for thirty-four years; there is no evidence in the record tending to show that this employment was in jeopardy or that he intended to retire in the near future.

At the time of the hearing on this matter, Marilyn Bevens was and had been living for several months with a friend who was providing her with food and shelter. However, she testified that the friend was expecting repayment for this "kindness." Thomas Bevens was residing in the marital home and admitted that he had not supported his wife, in any way, since she had been placed in the Toledo Mental Health Center in 1987.

The evidence offered at trial disclosed that Marilyn Bevens had no assets, expectancies or inheritances except for her personal belongings and the court-ordered one-half interest in her husband's pension. These monies are not available to her until such time as her ex-husband retires. Thomas Bevens will not reach the mandatory retirement age set by his employer for approximately twelve years; thus, no consideration can be given to any income Marilyn Bevens will receive from his pension plan until Thomas Bevens actually retires. As to Marilyn Bevens' income, it is true that she was awarded $26,000 for her one-half interest in the marital residence. However, the trial court indicated that this money would be placed in a trust fund for her. Assuming *arguendo*, that Marilyn Bevens was either directly paid this $26,000 or that it was held in trust and that the entire amount was put into an account bearing 8% interest per annum, she would receive approximately $170 per month as interest income. If this amount is added to the award of sustenance alimony of $100 per week (approximately $434 per month), Marilyn Bevens might, at most, have a total of $600 per month as income. Evidence offered below demonstrated that she would expend at least $150 per month for rent and $159.38 for medical and health insurance. After paying out these amounts, Marilyn Bevens would be left with only $67 per week for food, clothing, car insurance, car maintenance and repairs, and other necessities. This figure assumes that she pays *no* taxes - state or federal and, of course, does not include probable trustee and attorney fees incurred should the $26,000 be placed in trust.

Thomas Bevens, on the other hand, had base wages of $440 per week (non-inclusive of his bonus or vacation pay) an estimated $26,000 per year (1988) gross income. His listed expenses per month were $1423.33. However, this figure included a $371.17 mortgage payment per month which the trial court determined was being paid by his son, reducing his monthly expenses to $1,052.16. This is $86 per week additionally available to appellee. Moreover, Thomas Bevens had a vested pension valued at $117,805.10 as of December 1987, the marital residence, two life insurance policies, and savings and checking accounts.

A reading of the trial court's findings of fact and conclusions of law clearly reflects that the court below focused, to Marilyn Bevens' detri-

ment, on one of the relevant factors. That court was very concerned with her mental and emotional problems. While the physical and emotional condition of the parties must be considered in awarding sustenance alimony, that factor cannot be taken in isolation and be permitted to overshadow the remaining factors in R.C. 3105.18(B). *Kaechle, supra,* at 96. A reading of trial transcript and psychiatric reports makes it evident that Marilyn Bevens has severe psychological problems and *may* never be able to manage her finances. Nonetheless, that fact does not obviate her very real need for reasonable financial support from her ex-spouse. In fact, it reinforces the need for a greater award of sustenance alimony. One of the major purposes of sustenance alimony is to provide for the individual who has little or no potential for self-support. The amount awarded to that party must be based on his or her individualized *need* and not upon his or her ability to manage those funds. See *Kunkle, supra* at 70. In considering the needs of the parties as they relate to all of the relevant factors, the amount of sustenance alimony awarded to appellant was unreasonable, arbitrary and unconscionable. Under the totality of the circumstances in this cause, any sustenance alimony in an amount under $140 per week, would be totally inequitable.

At such time as Marilyn Bevens may be able to participate in Thomas Bevens' pension plan this amount might be reconsidered in light of the then prevailing circumstances. This result would be equitable in that Marilyn Bevens' proven greater need for support would be balanced by a greater tax savings to Thomas Bevens and accord each of the parties a more proportionate share of income as it relates to their expenditures.

Accordingly, Marilyn Bevens' first assignment of error is found well-taken.

As her second assignment of error, Marilyn Bevens argues the trial court erred in awarding the marital home to Thomas Bevens. The trial court in determining a division of marital property must consider the factors under R.C. 3105.18 in making such determination. Further, a division of marital property lies with the discretion of the trial court and will not be disturbed absent a showing of abuse of discretion. *Holcomb v. Holcomb* (1989), 44 Ohio St. 3d 128, 131.

In the present case, the trial court awarded the marital home valued at $52,000 to Thomas Bevens and further ordered Thomas Bevens to pay Marilyn Bevens $26,000 as her share of the interest in the home. Given Marilyn Bevens'

history of mental illness and her testimony at trial, the trial court found she was not competent to receive ownership and possession of the marital residence. Further, Thomas Bevens testified that he was capable of making the necessary financial arrangements needed to provide Marilyn Bevens with her share of the interest in the home.

Therefore, we find the trial court did not abuse its discretion in awarding the marital home to Thomas Bevens. Accordingly, Marilyn Bevens' second assignment of error is found not well-taken.

On consideration whereof, the court finds substantial justice has not been done the party complaining, and the judgment of the Lucas County Court of Common Pleas, Domestic Relations Division, is reversed in part. This cause is remanded to said court for further proceedings not inconsistent with this decision. It is ordered that appellee pay the court costs of this appeal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. See also Supp. R. 4, amended 1/1/80.

GLASSER, J., RESNICK, J., concur.
ABOOD, J., concurs in judgment only.

---

[1] R.C. 3105.18(S) provides:

"(B) In determining whether alimony is necessary, and in determining the nature, amount, and manner of payment of alimony, the court shall consider all relevant factors, including, but not limited to, the following:

"(1) The relative earning abilities of the parties;

"(2) The ages, and the physical and emotional conditions of the parties;

"(3) The retirement benefits of the parties;

"(4) The expectancies and inheritances of the parties;

"(5) The duration of the marriage;

"(6) The extent to which it would be inappropriate for a party, because he will be custodian of a minor child of the marriage, to seek employment outside the home;

"(7) The standard of living of the 'parties established during the marriage;

"(8) The relative extent of education of the parties;

"(9) The relative assets and liabilities of the parties;

"(10) The property brought to the marriage by either party;

"(11) The contribution of a spouse as homemaker."