The defendant-appellant, Philip Burress, brings his appeal from the decree of divorce entered August 28, 1998, which ended the marriage between the parties and, inter alia, awarded spousal support to the plaintiff-appellee, Billie E. Burress.
The singular assignment of error advanced is that the court erred in granting such support. It is predicated on the following factual propositions:
 The parties separated on October 6, 1996, after twenty-four years of marriage. Throughout the marriage, it was necessary for both parties to work full time in order to meet the financial needs of the family. At the time of the separation, Wife was employed full time and earned approximately $34,000 per year. Three months after the separation, Wife voluntarily quit her job and has not returned to full time work. Husband was ordered to pay Wife spousal support for nine years. Spousal support should not have been ordered where Wife voluntarily terminated her employment.
 Because of Wife's unemployment, Husband was ordered to pay spousal support of $1,850 per month for the first year following the divorce, $1,500 per month for the second year following the divorce, and $1,000 per month for the next six years. After payment of his own expenses, Husband will not have sufficient income with which to pay the spousal support award. The Magistrate's finding that Husband could work a second job to supplement his income and pay spousal support was inequitable and inappropriate.
 From the time the parties separated until Wife filed for divorce, Wife spent all of the available marital savings, which totaled $37,771.41, without Husband's knowledge or consent. During that same period, Husband paid all of Wife's housing expenses, plus paid her $6,733.84 to meet her miscellaneous living expenses. Wife's dissipation of the marital liquid assets should have been considered as a factor in determining spousal support.
 The preamble to the decree crystallizes the procedural history of the suit:
This matter came on for final hearing before the Court on December 12, 1997. The hearing was continued in progress and concluded on January 8, 1998, on Wife's Complaint for Divorce filed June 18, 1997. Both parties were present in Court with counsel throughout the proceeding. The Decision of the Magistrate was journalized February 17, 1998. An Amended Decision of the Magistrate on Divorce was journalized February 27, 1998. Both parties filed objections to the Amended Decision. The Decision and Order on Objections was journalized July 7, 1998.
The complete transcript of the proceedings before the magistrate provides the details of the events during the parties' marriage that afforded the basis for the several components of the order from which Philip Burress appeals.
That transcript reveals the convoluted financial transactions that occurred during most, if not all, of the more than twenty-four years of the marriage. They need not, for our purposes here, be set forth explicitly but, in fairness to the magistrate who listened with remarkable patience to the sometimes confusing and contradictory testimony of the couple, and to the judge who relied justifiably upon the magistrate's report, it must be said that, on some facets of the parties' management of their affairs and their choices, their testimony cannot be reconciled or rationalized.
In Kunkle v. Kunkle (1990), 51 Ohio St.3d 64, 554 N.E.2d 83, the Ohio Supreme Court reiterated the standards of review that govern our resolution of the issues before us. Clearly, a trial court, as part of a divorce proceeding, has equitable authority to divide and distribute a marital estate and, then, to consider whether an award of sustenance alimony would be appropriate. Subordinately, for an abuse of the discretion afforded the trial court to be shown, the record must establish that the court's attitude was unreasonable, arbitrary or unconscionable, and not merely an error of law or judgment.
Relatively recently, this court ruled upon the question whether an award of spousal support was appropriate and reasonable. Judge Walsh, writing for the court in Rheude v.Rheude (May 5, 1997), Clermont County App. No. CA96-10-084, unreported, referred to Kunkle, supra, and to the principles that govern us here, in these terms:
 Based upon the facts and circumstances of each case, the trial court has broad discretion to determine the proper amount of spousal support. Kunkle v. Kunkle (1990), 51 Ohio St.3d 64, 67, 554 N.E.2d 83; Hutchinson v. Hutchinson (Aug. 26, 1996), Clermont App. No. CA96-03-030, unreported at 3. A reviewing court should not substitute its judgment for that of the trial court unless the lower court abused its discretion. Kunkle, 51 Ohio St.3d at 67, 554 N.E.2d 83; Blakemore, 5 Ohio St.3d at 219, 450 N.E.2d 1140.
 We have recently held that need is an essential element in determining whether an award of spousal support is appropriate and reasonable. Carnahan v. Carnahan (Mar. 3, 1997), Clermont App. No. 96-08-072, unreported at 8. We must emphasize, however, that need is a "relative term, the conception of which must, within reasonable limits, vary with the personal situation of the individual employing it." Kunkle at 69, 554 N.E.2d 83. Awards of spousal support also must be reviewed in light of the "totality of the circumstances" and should be "fair, equitable, and in accordance with law." Id.; Kaechele v. Kaechele (1988), 35 Ohio St.3d 93, 94, 518 N.E.2d 1197. In sum, the goal in awarding spousal support should be "to reach an equitable result." Kaechele, 35 Ohio St.3d at 96, 518 N.E.2d 1197.
 The trial court derives its power to award spousal support from R.C. 3105.18. See Kunkle at 67, 554 N.E.2d 83. R.C. 3105.18(C) sets forth fourteen factors for the trial court to consider in determining whether spousal support is "appropriate and reasonable." The lower court must consider each factor and not base its decision on any one factor in isolation. Kaechele, 35 Ohio St.3d at 96, 518 N.E.2d 1197. The payee spouse's need for financial support is inherent in some, but not all of these factors, including: the income of the parties; the relative earning ability of the parties; the retirement benefits of the parties; the relative extent of education of the parties; the relative assets and liabilities of the parties; the time and expense necessary for the payee spouse to acquire education, training or job experience in order to obtain appropriate employment, and the lost income production of either party resulting from that party's marital responsibilities. R.C. 3105.18(C)(1)(a), (b), (d), (h), (i), (k), and (m).
 However, R.C. 3105.18(C) also requires the trial court to consider factors which do not solely address the payee spouse's need for spousal support, but which assist the trial court in achieving an equitable result. These include: the duration of the marriage, the standard of living of the parties established during the marriage, the relative extent of education of the parties, the contributions of each party to the education of the other, the tax consequences of a spousal support award, and the lost income production due to a spouse's marital responsibilities. R.C. 3105.18(C)(1)(e), (g), (h), (j), (l), and (m). [Footnotes omitted.]
Billie and Philip Burress were married on June 12, 1972. One of the idiosyncrasies in this case is that they were married twice (the second instance being September 12, 1972) because of problems stemming from prior marriages of both. Although each of them had children from prior unions, none were the issue of their marriage. Their marriage, however, was not untroubled. There were persistent financial problems, two bankruptcies arising from Philip's failed business enterprises, separations, an attempt to divorce and what, in light of their circumstances, can best be described as shortsighted decisions.
The conflicts between them precipitated a separation in late 1996, and Philip left their residence. Despite counseling sessions attended by both Billie and Philip, efforts to reconcile failed, and in late November 1996, Philip told Billie that he did not intend to return, and no further attempts to revive the marriage were made. On the basis of those facts, the magistrate found October 7, 1996, to be the date of separation. At that time, Philip was earning a salary of some $69,000 per annum and had other smaller sources of income as a golf course design consultant. Billie was earning between $30,000 and $34,000 per year as an employee of the Federal Internal Revenue Service. However, Billie elected to retire from that employment effective December 31, 1996.
Billie and Philip disagreed during the proceedings below on the reason for her retirement. She testified that she did so because Philip wanted her to accompany him on the frequent trips his job required him to take. Philip testified that he knew Billie "hated her job" and had experienced some problems with at least one of her supervisors. He admitted that he "was encouraging her to get out" of her job because of those adverse influences.
Billie's efforts to find employment were, at least when the last testimony was taken, unsuccessful, despite what appeared to have been good-faith contacts with a considerable number of prospective employers. At that time, she was taking courses of instruction to become a certified teacher of those suffering from hearing impairments. Although Philip complained of the unusual level of stress in his work, he continued it. At the date of termination of their marriage Philip was fifty-six years old and Billie was fifty-seven years of age.
Unquestionably, Billie appropriated, and then disbursed, a significant amount of the marital assets. Exactly how, and for what, the alleged total of some $35,000 was spent is difficult to determine from the tangled accounts of both parties, but that was typical of the management of their finances during the prior twenty-four years. Ultimately, the court rectified the inequity to Philip resulting from Billie's actions in the division of the marital assets.
The primary asset of the parties was the marital residence in Loveland, Ohio. Philip had obtained a "zoned B-2," zoning classification on the residence, which permitted general business usages. He sought its award to him because he could conduct businesses he planned from it after the divorce. The value of the equity in it, $37,586.97, appears to have been uncontested. In the decree, Billie was ordered to quitclaim her interest in it to him.
The focal point of Philip's disagreement with the court's final order is the determination that despite the finding of the magistrate, adopted by the court, that Billie acted unreasonably in leaving her $30,000-plus job at the IRS, only the minimum wage was imputed to her, whereas he, Philip, was required to "make up the short fall in [Billie's] living expenses."
Ordinarily, a person's intentional conduct and its foreseeable result in decreased earnings does not afford a reasonable basis upon which to conclude that a change in circumstances for which that person has no responsibility has occurred. See, e.g., Brockmeier v. Brockmeier (1993), 91 Ohio App.3d 689,633 N.E.2d 584. Resultantly, Billie should, in law, suffer the consequences of her precipitous and voluntary resignation from what was, in her words, "the best job she ever had."
On the surface, this basic precept would seem to validate Philip's basic protest. But the law requires an essentially equal apportionment of both assets and responsibilities in light of the totality of the circumstances. Rheude v. Rheude, supra.
Accordingly, we must look to the decree in its entirety to determine whether the court erred.
Philip objected specifically to the magistrate's determination that he should pay "substantial spousal support" to Billie. The court overruled that objection in these words:
 Upon review of the transcript, the Court finds that the Magistrate's Decision awarding spousal support is supported by the evidence. Plaintiff has a high school education and one year of college credits. Plaintiff and Defendant were married for well over twenty years, during which time Plaintiff worked sporadically. For the past ten years, until her retirement in December 1996, Plaintiff worked for the Internal Revenue Service. Although she voluntarily left her position with the IRS, she has subsequently sought employment elsewhere. The Magistrate properly imputed a minimum wage income to Plaintiff, as there is no reason why she could not presently be working full time. However, there is no evidence that Plaintiff is voluntarily underemployed beyond the imputed minimum wage salary. Defendant did not present evidence to suggest that Plaintiff could be employed at the same level as she previously was at the IRS. Defendant's income far exceeds that of the Plaintiff. Therefore, considering all of the factors in O.R.C. 3105.18(C), the Magistrate's award of spousal support is appropriate.
While the overarching standard of review is whether the trial court abused its discretion, that standard inevitably draws into consideration the question whether a factual finding made in the process was unsupported by, or against the manifest weight of, the totality of the evidence.
The axiom that controls us in this aspect of the appeal appears definitively in State v. DeHass (1967), 10 Ohio St.2d 230,227 N.E.2d 212, paragraph one of the syllabus:
 On the trial of a case, either civil or criminal, the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts.
Undoubtedly, a court of appeals has the duty, in an appropriate case, to review the record as it applies to the issue of weight of the evidence, but the underlying tenet is that the court on review cannot substitute its judgment on factual questions for that of the trial court unless it is manifest that the trier of the facts clearly lost its way and created a miscarriage of justice. The governing concept appears in C.E.Morris Co. v. Foley Constr. Co. (1978), 54 Ohio St.2d 279,376 N.E.2d 578, syllabus, and is stated in these terms:
 Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence.
Resultantly, the determinative factor is not whether this court would have found as the trial court did. Rather, it is whether the trial court was persuaded by law and the probative value of the evidence to assess the case as it did.
Upon the evidence in its entirety, the trial court was justified in concluding that Billie, encouraged by Philip to retire, did so because she was convinced that her retirement would permit her to spend the time with Philip that he sought, and that to her was necessary to save a failing marriage. Such a conclusion alleviates the consequences of Billie's voluntary reduction of earnings.
In the amended decision filed February 27, 1998, the magistrate declared:
 For at least one year before the end of the marriage, the parties discussed Plaintiff's retirement from IRS. Defendant did not like Plaintiff working second or third shift during tax season, and Plaintiff often complained about her duties. Additionally, Plaintiff was not free to travel with Defendant, as was often required for his employment. Plaintiff testified Defendant persuaded her that in order to save their marriage, she needed to terminate her employment with IRS in order to be available to accompany Defendant on trips and to help him with his responsibilities for Citizens for Community Values (CCV). The parties spoke of their plans for Plaintiff's retirement to Plaintiff's children. Plaintiff advised her supervisor at IRS in August 1996 that she planned to retire at the end of the year. The parties separated in October 1996. Plaintiff, however, believed the parties would work through their problems and reconcile. She testified Defendant repeatedly told her he did not want a divorce. Defendant testified he told Plaintiff on November 25, 1996, he could not live with her anymore and he did not want to spend any more time with her. Plaintiff testified Defendant never spoke of a divorce until May 1997. In spite of their difficulties, Plaintiff retired on December 31, 1996. Plaintiff's supervisor testified Plaintiff could have changed her mind at any time prior to the 31st, and remained in her position with IRS.
 Plaintiff's retirement, based on everything that happened between the parties in the fall of 1996 was not reasonable. However, Defendant's request that the Court impute Plaintiff's income at her position with IRS for purposes of determining whether spousal support should be ordered is not reasonable either. The Court will impute a minimum-wage income to Plaintiff in the amount of $10,717.00 annually, or $700.00 monthly, in addition to her FERS benefit.
We are persuaded by the record that the particulars of the decree of divorce that are germane to the award of spousal support are not contrary to law or against the manifest weight of the evidence, nor are they the products of any abuse of the discretion inherently possessed by the trial court.
Resultantly, we hold that the assignment of error is not well taken, and it is overruled. The judgment of the Clermont County Court of Common Pleas, Division of Domestic Relations, is affirmed.[1]
 Doan, P.J., Winkler and Shannon, JJ.
Judges Rupert A. Doan, Ralph Winkler and Raymond E. Shannon, retired, of the First Appellate District, sitting by assignment.
Please Note:
The court has placed of record its own entry in this case on the date of the release of this Decision.
[1] It is significant to us that in the divorce decree the court retained jurisdiction to modify spousal support upon the demonstration of a change in circumstances. Neither party, then, is without a means by which to gain appropriate relief in the future.