DECISION AND JUDGMENT ENTRY
This case is before the court on appeal from the Lucas County Court of Common Pleas, Domestic Relations Division, which granted a divorce to the parties and awarded child support, spousal support, and attorney fees. For the reasons that follow, we affirm in part, reverse in part, and remand.
Appellee Alvera Byabato and appellant Edmund Ijumba were married in New York in 1990. Both were college-educated. Three children were born of the marriage: Kendra, born March 15, 1993; Ingrid, born June 30, 1995; and Ethan, born August 27, 1998. Kendra has been diagnosed with autism and, according to her physician, Kendra probably has mental retardation as well. Because of these conditions, Kendra needs more attention than an average child of her age and, according to her physician, she will probably always need around-the-clock care. Also, because Kendra needs special services, appellee often has to leave work early or in the middle of the day to get Kendra where she needs to go. According to appellee, because Kendra has special needs, appellee is unable to work a full-time job. She currently works part-time as a bank teller, earning $8.23 an hour. According to Kendra's physician, once Kendra reaches the age of about twelve, she will no longer be eligible for day care, and Kendra will not be eligible for residence in a group home until she is an adult. Kendra's physician agrees that, given Kendra's needs, appellee would be unable to assume a full-time job.
In 1999, appellee filed a complaint for divorce and, following a trial, the trial court granted the parties a divorce in a judgment entry filed February 13, 2001. In that judgment entry, the trial court ordered, among other things, that appellant pay spousal support of $600 per month to continue until such time as either party dies or appellee remarries or cohabitates. (According to the judgment, the need for spousal support would be reviewed by the court after five years.) The trial court also ordered appellant to pay a part of appellee's attorney fees in the amount of $2,500. Appellant appeals from this judgment, setting forth the following three assignments of error:
"ASSIGNMENT OF ERROR NO. 1
 THE TRIAL COURT ERRED IN FAILING TO SET FORTH A DATE FOR THE TERMINATION OF APPELLANT'S SPOUSAL SUPPORT OBLIGATION.
 "ASSIGNMENT OF ERROR NO. 2
 THE TRIAL COURT ERRED IN AWARDING APPELLEE SUSTENANCE SUPPORT IN THE AMOUNT OF $600.00 PER MONTH FOR AN INDEFINITE PERIOD OF TIME.
 "ASSIGNMENT OF ERROR NO. 3
 THE TRIAL COURT ERRED IN AWARDING APPELLEE ATTORNEY FEES OF $2,500.00."
As the first two assignments of error are related, we shall address them together.
In determining whether spousal support is appropriate, the trial court shall consider the factors set out in R.C. 3105.18(C)(1). Those factors are:
 "(a) The income of the parties, from all sources, including, but not limited to, income derived from property divided, disbursed, or distributed under section 3105.171 of the Revised Code;
"(b) The relative earning abilities of the parties;
 "(c) The ages and the physical, mental, and emotional conditions of the parties;
"(d) The retirement benefits of the parties;
"(e) The duration of the marriage;
 "(f) The extent to which it would be inappropriate for a party, because that party will be custodian of a minor child of the marriage, to seek employment outside the home;
 "(g) The standard of living of the parties established during the marriage;
"(h) The relative extent of education of the parties;
 "(i) The relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties;
 "(j) The contribution of each party to the education, training, or earning ability of the other party, including but not limited to, any party's contribution to the acquisition of a professional degree of the other party;
 "(k) The time and expense necessary for the spouse who is seeking spousal support to acquire education, training, or job experience so that the spouse will be qualified to obtain appropriate employment, provided the education, training, or job experience, and employment is, in fact, sought;
 "(l) The tax consequences, for each party, of an award of spousal support;
 "(m) The lost income production capacity of either party that resulted from that party's marital responsibilities;
 "(n) Any other factor that the court expressly finds to be relevant and equitable."
A trial court has discretion to determine whether to award spousal support. Kunkle v. Kunkle (1990), 51 Ohio St.3d 64, 67. However, this discretion is not unlimited; in determining whether to award spousal support, the trial court's discretion is subject to the factors set out in R.C. 3105.18 (C)(1). Koegel v. Koegel (1982), 69 Ohio St.2d 355,357. A trial court abuses its discretion when its attitude is "unreasonable, arbitrary, or unconscionable" and not merely an "error of law or judgment." Kunkle, 51 Ohio St.3d at 67.
The law favors a definite termination date for awards of spousal support, giving the payee enough time to become self-supporting. Id. at 69. However, if the payee does not have "resources, ability, or potential to become self-supporting," an award of spousal support for life would be appropriate. Id. (emphasis omitted).
In this case, the record supports the conclusion that appellee is not able to become self-supporting at any time in the foreseeable future because of the demands of caring for a special needs child in addition to two other small children.[1] See R.C. 3105.18(C)(1)(b), (f). Courts have recognized the additional difficulties in caring for a child with special needs and have recognized that it is not always feasible for the custodial parent to maintain a full-time job while caring for such a child. See Goode v. Goode (1991), 70 Ohio App.3d 125, 130; Shaffer v.Shaffer (1996), 109 Ohio App.3d 205, 211; Sullivan v. Sullivan (Sept. 29, 2000), Lucas App. No. L-99-1407, unreported. We cannot say, therefore, that the trial court abused its discretion in ordering spousal support for an indefinite period.
Additionally, we cannot say that the trial court abused its discretion in setting the amount of spousal support at $600 per month. The worksheet that the trial court relied on and the testimony at trial reveal that such a figure, when coupled with the payment of child support, puts the parties on relatively equal footing. Nevertheless, appellant contends that, after he pays child support and spousal support, appellee's gross income will be more than his. A review of the record reveals that, if this is true, the difference between the parties' gross income would be just over $3,000 in favor of appellee. Such an difference is justifiable when considering that appellee is maintaining a household consisting of four individuals while appellant is maintaining a household consisting of only himself. For these reasons, we find that the trial court did not abuse its discretion in ordering appellant to pay spousal support in the amount of $600 per month. Appellant's first and second assignments of error are not well-taken.
In his third assignment of error, appellant contends that the trial court erred in awarding attorney fees when there was no testimony setting out the amount of attorney fees that appellee has incurred. R.C.3105.18(H) authorizes the trial court to award attorney fees. That section provides:
 "(H) In divorce or legal separation proceedings, the court may award reasonable attorney's fees to either party at any stage of the proceedings, including, but not limited to, any appeal, and any proceeding arising from a motion to modify a prior order or decree, and any proceeding to enforce a prior order or decree, if it determines that the other party has the ability to pay the attorney's fees that the court awards. When the court determines whether to award reasonable attorney's fees to any party pursuant to this division, it shall determine whether either party will be prevented from fully litigating that party's rights and adequately protecting that party's interests if it does not award reasonable attorney's fees."
The burden of demonstrating the reasonableness of attorney fees is on the person requesting the fees. Shaffer, 109 Ohio App.3d 205, 214. However, in some cases the trial court, by exercising its own knowledge and experience, may evaluate the reasonableness and necessity of attorney fees merely by examining the record before it. Id.
In this case, the court ordered appellant to pay $2,500 toward appellee's attorney fees. However, there is no evidence in the record as to the total amount of appellee's attorney fees and whether those fees are reasonable. Unlike in Shaffer, where the court had before it the total amount of attorney fees incurred, in this case the court had no such information before it to evaluate whether the amount of attorney fees charged to appellee was reasonable. The court did not even make a finding that the attorney fees incurred by appellee were reasonable. We therefore find that the trial court abused its discretion in ordering appellant to pay $2,500 toward appellee's attorney fees. Accordingly, appellant's third assignment of error is found well-taken, and this case is remanded to the trial court to take evidence and make a determination on attorney fees.
The judgment of the Lucas County Court of Common Pleas, Domestic Relations Division, is affirmed in part and reversed in part. That portion of the judgment ordering appellant to pay $2,500 toward appellee's attorney fees is reversed and the case is remanded for further proceedings consistent with this decision. The judgment is affirmed in all other respects. The court costs of this appeal are to be equally divided between the parties.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Melvin L. Resnick, J., James R. Sherck, J., and Mark L. Pietrykowski,P.J., CONCUR.
[1] Appellant contends that appellee testified that the reason that she cannot take a full-time job is because of her immigration status, not because of Kendra's special needs. This is not true. Appellee testified that she was unable to work full-time sometime between 1990 and 1993 due to her immigration status; however, she testified that she is presently unable to work full-time because of Kendra's needs.