OPINION
{¶ 1} On September 24, 1975, appellant, Glen Scheetz, and appellee, Shirley Scheetz, were married. On January 24, 2001, appellee filed a complaint for divorce.
 {¶ 2} Hearings before a magistrate were held on October 18, 2001 and November 5, 2001. By decision filed March 20, 2002, the magistrate recommended a divorce and divided the parties' property.
 {¶ 3} Appellant filed objections to the magistrate's decision. By judgment entry filed June 4, 2002, the trial court denied the objections. Thereafter, the trial court approved and adopted the magistrate's decision.
 {¶ 4} Appellant filed an appeal and this matter is now before this court for consideration. Assignments of error are as follows:
 I {¶ 5} "Whether Or Not The Court Calculated The Spousal Support Correctly?"
 II {¶ 6} "Whether The Court Erred In Dividing The Exxon Stock Of The Husband Equally Despite The Fact That It Had Been The Husband's Inheritance From His Father When He Was Thirteen Years Old?"
 III {¶ 7} "Whether The Court Erred In Failing To Grant The Husband Credit For Contributions Of The Exxon Stock As Separate Property In The Value Of The Marital Residence?"
 IV {¶ 8} "Whether The Court Erred In Failing To Award The Appellant $30,000.00 As And For Gifts Made From His Mother's Estate To Him Which Were Directly Contributed Into The Marital Residence Against The Mortgage?"
 I {¶ 9} Appellant claims the trial court erred in calculating spousal support. We disagree.
 {¶ 10} In determining spousal support, courts in this state are guided by R.C. 3105.18(C)(1) and the Supreme Court of Ohio's decision inKunkle v. Kunkle (1990), 51 Ohio St.3d 64, paragraph one of the syllabus, which states as follows:
 {¶ 11} "Except in cases involving a marriage of long duration, parties of advanced age or a homemaker-spouse with little opportunity to develop meaningful employment outside the home, where a payee spouse has the resources, ability and potential to be self-supporting, an award of sustenance alimony would provide for the termination of the award, within a reasonable time and upon a date certain, in order to place a definitive limit upon the parties' rights and responsibilities."
 {¶ 12} R.C. 3105.18(C)(1) states as follows:
 {¶ 13} "(C)(1) In determining whether spousal support is appropriate and reasonable, and in determining the nature, amount, and terms of payment, and duration of spousal support, which is payable either in gross or in installments, the court shall consider all of the following factors:
 {¶ 14} "(a) The income of the parties, from all sources, including, but not limited to, income derived from property divided, disbursed, or distributed under section 3105.171 of the Revised Code;
 {¶ 15} "(b) The relative earning abilities of the parties;
 {¶ 16} "(c) The ages and the physical, mental, and emotional conditions of the parties;
 {¶ 17} "(d) The retirement benefits of the parties;
 {¶ 18} "(e) The duration of the marriage;
 {¶ 19} "(f) The extent to which it would be inappropriate for a party, because that party will be custodian of a minor child of the marriage, to seek employment outside the home;
 {¶ 20} "(g) The standard of living of the parties established during the marriage;
 {¶ 21} "(h) The relative extent of education of the parties;
 {¶ 22} "(i) The relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties;
 {¶ 23} "(j) The contribution of each party to the education, training, or earning ability of the other party, including, but not limited to, any party's contribution to the acquisition of a professional degree of the other party;
 {¶ 24} "(k) The time and expense necessary for the spouse who is seeking spousal support to acquire education, training, or job experience, and employment is, in fact, sought:
 {¶ 25} "(l) The tax consequences, for each party, of an award of spousal support;
 {¶ 26} "(m) The lost income production capacity of either party that resulted from that party's marital responsibilities;
 {¶ 27} "(n) Any other factor that the court expressly finds to be relevant and equitable."
 {¶ 28} Appellant argues the trial court erred in basing the spousal support award on a misstatement of the evidence. Appellant argues the magistrate's Finding of Fact No. 12 states appellee's workers compensation benefit is $175.39 every two weeks when in fact it is $175.39 every week. Appellee agrees with this fact. T. at 29.
 {¶ 29} The trial court awarded appellee spousal support in the amount of $1000.00 per month for eight years. The award is predicated upon the parties' "disparate incomes***as well as earning abilities and history." See, Conclusion of Law No. 2. The income assigned to appellee under the actual facts would be $9,120.28 per year. Appellant's earnings are $48,254.46. See, Exhibit 6. Using either figure, there is a disparity in the parties' income. In fact, appellant makes five times as much as appellee. The inaccurate income figure for appellee was raised in appellant's objections to the magistrate's decision. The trial court acknowledged the inaccurate amount in its judgment entry of June 4, 2002 and rejected the argument.
 {¶ 30} We concur with the trial court's assessment there is a disparity in the income amounts. The spousal support award raises appellee's income to $21,120.28 whereas appellant's income is adjusted to $36,254.46.
 {¶ 31} Upon review, we fail to find any error in the trial court's decision.
 {¶ 32} Assignment of Error I is denied.
 II {¶ 33} Appellant claims the trial court erred in determining the Exxon stock was marital property as it was his separate property. We disagree.
 {¶ 34} R.C. 3105.171(B) authorizes the trial court to determine "what constitutes marital property and what constitutes separate property." Subsection (A)(3)(a) defines "marital property" as follows:
 {¶ 35} "(i) All real and personal property that currently is owned by either or both of the spouses, including, but not limited to, the retirement benefits of the spouses, and that was acquired by either or both of the spouses during the marriage;
 {¶ 36} "(ii) All interest that either or both of the spouses currently has in any real or personal property, including, but not limited to, the retirement benefits of the spouses, and that was acquired by either or both of the spouses during the marriage;
 {¶ 37} "(iii) Except as otherwise provided in this section, all income and appreciation on separate property, due to the labor, monetary, or in-kind contribution of either or both of the spouses that occurred during the marriage;
 {¶ 38} "(iv) A participant account, as defined in section 148.01
of the Revised Code, * * *."
 {¶ 39} "Separate property" as defined in subsection (A)(6)(a) "means all real and personal property and any interest in real or personal property that is * * * acquired by one spouse prior to the date of the marriage" and "[p]assive income and appreciation acquired from separate property by one spouse during the marriage." "Passive income" is defined in subsection (A)(4) as "income acquired other than as a result of the labor, monetary, or in-kind contribution of either spouse."
 {¶ 40} In the magistrate's decision at paragraph 23, approved and adopted by the trial court, the following finding as to the Exxon stock was made:
 {¶ 41} "The parties own 2000 shares of Exxon stock. The Husband inherited about 80 shares of this stock when he was a teenager, following the death of his father. At some point, he put the Wife's name on the Exxon stock and all stock is currently listed as owned by the parties as joint tenants with the right of survivorship. The Wife testified that the Husband put her name on the stocks and changed the ownership status about the time their son was born (1975). It is notable that an Exxon document supports a joint tenancy ownership of this stock as early as 1979. The Husband can't recall exactly when he did this, but alleges it was because the Wife insisted he do so. The stock eventually split, although neither party can remember when that occurred. The parties sold 280 shares in 1999 and the proceeds of that sale were disbursed to both parties, jointly. The value of this stock, as of the termination date of this marriage was listed at $41.75 per share, or a total value of $83,500.00. The Court finds that the Exxon stock is marital property."
 {¶ 42} Plaintiff's Exhibit 12 is a listing of the Exxon stock from the company, listing the parties individually as joint tenants. T. at 40, 170. Even though the Exxon stock was originally appellant's, he put appellee's name on all the Exxon stock sometime before their son was born in 1975. T. at 41-42. The parties jointly sold some of the stock to pay appellant's mother's estate for a loan on the purchase of the marital residence. T. at 43-44, 171.
 {¶ 43} We find these facts to be a clear indication that appellant gifted one-half of his original separate property to appellee. The placing of the stock in their joint names, coupled with the fact that some of the stock was used to finance the marital residence, is sufficient to label the stock as marital property.
 {¶ 44} Assignment of Error II is denied.
 III {¶ 45} Appellant claims the use of $20,502.55 of Exxon stock to repay the loan from his mother's estate was separate property. We disagree.
 {¶ 46} As we stated in Assignment of Error II, it is clear through appellant's actions he gifted one-half of the stock to appellee before the 1998/1999 use of the stock proceeds for the marital residence debt.
 {¶ 47} Assignment of Error III is denied.
 IV {¶ 48} Appellant claims the $30,000 given by his mother's estate which was used as a loan on the marital residence should be treated as his separate property. We disagree.
 {¶ 49} The property was purchased and mortgaged in the parties' joint names. T. at 43-44. The money was given to both parties. T. at 179-180, 182-183.
 {¶ 50} It is appellant's position the $30,000 was a gift solely to him and was only given in the parties' joint names to avoid taxes. T. at 159, 180.
 {¶ 51} In the magistrate's decision at paragraph 17, the following finding on the $30,000 amount was made:
 {¶ 52} "There is a disputed issue of whether or not separate property contributed to the equity in this real estate. The Husband's mother, through her trustee or her power of attorney, loaned the parties $30,000.00 towards the purchase of this real estate. The parties have paid that back by cashing in some stock and also by `giving back' money subsequently gifted to each of them by the mother's estate. These gifts from the Husband's mother were gifted to both parties in separate checks made out to each one of them for equal amounts ($10,000.00 each). Since each of the parties received an equal gift amount which they each then used to help pay back a loan, any offset would be equal and thus any credit to either party for this gift money applied to the home purchase is equal and offsetting."
 {¶ 53} We conclude the trial court's interpretation is just as valid an appraisal of the evidence as is the opposing view. Based upon the right of the trier of fact to determine the issues of credibility, we find no abuse of discretion by the trial court.
 {¶ 54} Assignment of Error IV is denied.
 {¶ 55} The judgment of the Court of Common Pleas of Stark County, Ohio, Domestic Relations Division is hereby affirmed.
Gwin, P.J. and Edwards, J. concur.