OPINION
{¶ 1} Defendant-appellant, Lisa Rothenbusch, appeals the decision of the Butler County Court of Common Pleas, Domestic Relations Division. We affirm the decision of the trial court.
 {¶ 2} Appellant ("Lisa") and plaintiff-appellee, Kirby Rothenbusch ("Kirby") were married in Millville, Ohio on May 8, 1993. They have one son, Tristan, who was born on April 12, 2000. On September 9, 2004, Kirby filed a complaint for legal separation which was later converted to a complaint for divorce. The trial court held a hearing on the matter on March 7 and 9, 2005. It issued a decision on April 4, 2005 and provided clarification upon Lisa's request on May 9, 2005. On June 10, 2005, the trial court filed a judgment entry and divorce decree.
 {¶ 3} Lisa appeals the decision of the trial court raising three assignments of error:
 {¶ 4} Assignment of Error No. 1:
 {¶ 5} "THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANTA-PPELLANT WHEN IT GRANTED CUSTODY TO MR. ROTHENBUSCH AND RESTRICTED DEFENDANT-APPELLANT TO SUPERVISED VISITATION ONLY."
 {¶ 6} In the first assignment of error, Lisa argues that the trial court erred when it granted custody of the parties' son to Kirby. She maintains that the trial court placed undue focus on her mental health issues when it made the decision. Lisa also argues that the trial court erred when it ordered supervised visitation with her child.
 {¶ 7} A trial court has broad discretion in custody proceedings and its judgment will not be reversed absent an abuse of discretion. Davis v. Flickinger (1997), 77 Ohio st.3d 415, paragraph one of the syllabus. Abuse of discretion "connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable."Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219. In reviewing a custody determination, an appellate court must keep in mind that the trial court is better equipped to examine and weigh the evidence and to make decisions concerning custody.Miller v. Miller (1988), 37 Ohio St.3d 71, 74.
 {¶ 8} While a trial court's discretion in a custody proceeding is broad, it is not absolute. Krayterman v.Krayterman, Butler App. No. CA2003-05-108, ¶ 30. The trial court must follow the procedure outlined in R.C. 3109.04 when making an initial allocation of parental rights and responsibilities, and the primary concern of the trial court is the child's best interest. Id.; R.C. 3109.04(B)(1). The trial court must consider all relevant factors related to the child's best interest including the factors specified by R.C. 3109.04(F)(1). Where an award of custody is supported by a substantial amount of credible and competent evidence, such an award will not be reversed by a reviewing court as being against the weight of the evidence.Bechtol v. Bechtol (1990), 49 Ohio St.3d 21, syllabus.
 {¶ 9} In this case, we find that the trial court did not abuse its discretion when it named Kirby the residential parent of the parties' minor child. We also find that the trial court acted within its discretion when it ordered Lisa to have supervised parenting time with her son.
 {¶ 10} The trial court considered all of the statutory factors before naming Kirby the residential parent. A substantial portion of the court's findings of fact were devoted to Lisa's mental health. The court considered that Lisa was diagnosed with bi-polar disorder following a manic episode in 1985. She informed Kirby of her condition prior to their marriage in 1993. Since the parties' marriage, Lisa had had eight manic episodes, including one in September 2004, the most recent at the time of the March 2005 hearing. During that episode, Lisa was taking Tristan to breakfast at 9:00 a.m., but she kept driving until she was found 11 hours later in Van Wert, Ohio where her car had run out of gas. She did not know where she was. Kirby had to travel to Van Wert to pick them up.
 {¶ 11} In addition to the testimony of the parties at the hearing concerning these manic episodes, the trial court considered evidence relating to Lisa's behavior and communication with Tristan during October, 2004 visitations supervised by the Butler County Domestic Relations Family Unit. At the hearing, Holly Schultheis, Family Unit Director, testified that supervised visits should be temporarily suspended following two supervised visits during which Lisa "did not seem stable." She described how Lisa made a number of statements that seemed "out of touch with reality." The trial court also considered evidence from Sarah Dana, a psychologist for Children's Diagnostic Center in Hamilton, Ohio, who recommended that Lisa have continued supervised parenting time because of concerns about her mental stability.
 {¶ 12} With respect to other statutory factors, the trial court found that Tristan currently had greater interaction and interrelationship with Kirby, that Tristan was adjusted to Kirby's home and community, and that Lisa intended to remain in Rhode Island while Kirby intended to live in Ohio and work in Indiana. After considering all of the statutory factors, the court named Kirby the residential parent and ordered that Lisa continue to have supervised visitation. We find that the court acted well within its discretion by considering these issues and then making custody and visitation determinations consistent with the best interest of the child. The first assignment of error is overruled.
 {¶ 13} Assignment of Error No. 2:
 {¶ 14} "THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANTA-PPELLANT WHEN IT DID NOT GRANT HER SPOUSAL SUPPORT."
 {¶ 15} A trial court has broad discretion in determining whether an award of spousal support is appropriate. See Holcombv. Holcomb (1989), 44 Ohio St.3d 128, 130-131. A trial court's decision to award spousal support will be reversed only if it is found to be an abuse of that discretion. See Kunkle v. Kunkle
(1990), 51 Ohio St.3d 64, 67. In determining whether a spousal support award is appropriate and reasonable, a trial court must consider the 14 factors set forth in R.C. 3105.18(C)(1).
 {¶ 16} The trial court did not award spousal support Lisa. However, the court did order Kirby to provide health insurance for Lisa under the Consolidated Omnibus Budge Reconciliation Act ("COBRA"). Lisa then moved for clarification because Kirby could not provide her with COBRA coverage through his employer. Lisa requested that spousal support be ordered in monetary form. In response, the trial court explained that its order was based on employment-based health insurance, and that it would not order Kirby to provide Lisa with health insurance if such could not be obtained through his employer. The court stated that spousal support was appropriate in terms of Kirby paying for COBRA coverage, but said that if COBRA coverage was not available, then Kirby would not be ordered to pay any spousal support.
 {¶ 17} We find the trial court did not err by not awarding Lisa spousal support. Lisa retained significant non-marital assets, negating the need for spousal support. She inherited two properties free and clear of debt from her father valued at $665,000 and $221,000 respectively. She also received approximately $400,000 from the division of marital property, including real estate valued at $365,000; a 2001 Land Rover valued at $18,175; $2,684.10 from a Washington Trust account; and $15,000 from an Ameri-Trade account. Accordingly, Lisa retained assets totaling over $1,200,000. The court additionally found that the two inherited properties generated rental proceeds, and that Lisa was free to sell or rent any of the three properties and thereby generate significant income.
 {¶ 18} Kirby received approximately $400,000 from the division of marital property. The court found that he was earning $80,000 annually and that he was earning to his potential. We find that the trial court acted within its discretion when it did not award spousal support to Lisa even though the court expressed uncertainty as to whether she had ability to work. Lisa retained significant assets after the marriage, including the ability to generate income through the sale or rental of her properties.
 {¶ 19} Lisa also argues that the trial court abused its discretion when it did not hear additional evidence regarding the cost of private health insurance. At a hearing following Lisa's motion for clarification, the trial court explained that it did not intend for Kirby to pay Lisa's health insurance at any cost. The court stated that it "would not have ordered non-employment based health insurance." While no evidence was presented as to the cost of private health insurance, the trial court acted within its discretion in determining the amount of spousal support as being limited to COBRA coverage if available. Lisa's significant assets negated the need for spousal support. The second assignment of error is overruled.
 {¶ 20} Assignment of Error No. 3:
 {¶ 21} "THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANTA-PPELLANT WHEN IT HELD THAT DEFENDANT-APPELLANT HAD NOT PROPERLY TRACED CERTAIN ASSETS."
 {¶ 22} In the third assignment of error, Lisa argues that the trial court erred when it found certain assets were marital property subject to division, specifically real estate at 20 Link Lane in Rhode Island and Charles Schwab investment account No. 5950 ("Acct. No. 5950"). Lisa claims that these assets were separate property that should have been awarded to her in their entirety.
 {¶ 23} A trial court is required to determine what property is marital property and what property is separate property, and upon doing so, equitably divide the property between the spouses in accordance with the provisions of R.C. 3105.171. R.C.3105.171(B). Separate property must be disbursed to its owner, unless the trial court chooses to make a distributive award from it under R.C. 3105.171(E). R.C. 3105.171(D).
 {¶ 24} The act of commingling separate property with marital property will not destroy the separate property's identity as separate property unless its identity is not traceable. R.C.3105.171(A)(6)(b). Thus, if property can be traced, it remains the separate property of its owner and must be disbursed to the owner unless the trial court, in the exercise of its discretion, decides to make a distributive award. If the property cannot be traced, it is marital property and must be divided equitably. Sowald Morganstern, Domestic Relations Law (4 Ed. 2002) 586, Section 12:10, fn. 5. See, also, Moore v. Moore (Dec. 4, 2000), Brown App. No. CA2000-03-006 (where spouse could trace money used to purchase asset to premarital funds, asset remains spouse's separate property).
 {¶ 25} In this case, Lisa claims a separate interest in the real estate located at 20 Link Lane in Rhode Island. Lisa testified that she inherited property from her father which was later sold for approximately $110,000. She claimed that she kept the money in a separate, personal bank account. According to Lisa, she then wrote a check from this account to Washington Trust Bank, obtaining a cashier's check that was used to pay the bulk of the $187,000 Link Lane purchase price. Both Lisa's personal check to Washington Trust and the cashier's check from Washington Trust to the Wells Fargo Home Mortgage Company were entered into the record.
 {¶ 26} The trial court found that Lisa presented insufficient evidence that she was entitled to all of the interest in 20 Link Lane as her separate property. The court stated that the documents presented "were not payments to the mortgage holder, but payments for the deposit of monies into a bank account," and thus, the tracing of separate property was incomplete. At trial, Lisa presented an analysis of the Link Lane mortgage payment and payoff to Flagship Mortgage Company. However, the only evidence offered by Lisa supporting her claim that the residence should be considered separate property was her personal check to Washington Trust and the cashier's check, which was not written to the mortgage holder but to Wells Fargo Home Mortgage Company. There was no documentation regarding the satisfaction of the mortgage.
 {¶ 27} We find that the court acted within its discretion when it found that Lisa failed to establish that the Link Lane residence constituted separate property, and accordingly designated the property as a marital asset.
 {¶ 28} With respect to Acct. No. 5950, Lisa argues that this account, totaling $180,000, was separate property. In July 2003, the parties had planned to divorce. On the advice of her attorney, Lisa began dividing the parties' assets, including $91,751 that the parties had invested in Charles Schwab account No. 7049 ("Acct. No. 7049"). Lisa created Acct. No. 5950 using her $45,000 portion of Acct. No. 7049. Kirby testified that this division was done unilaterally. There was no court decree ordering such division, and the parties later reconciled and resumed living together.
 {¶ 29} We find that the trial court did not abuse its discretion when it found Acct. No. 5950 was marital property. There is no court decree dividing Acct. No. 7049. Thus, Lisa's decision to reinvest $45,000 from the account did not change the fact that that $45,000 was marital property. Accordingly, Lisa's third assignment of error is overruled.
 {¶ 30} Judgment affirmed.
Walsh and Bressler, JJ., concur.