[Cite as *Quinn v. Quinn*, 2022-Ohio-3643.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| MICHAEL QUINN, | : | JUDGES: |
| | : | Hon. W. Scott Gwin, P.J. |
| Plaintiff - Appellee | : | Hon. Patricia A. Delaney, J. |
| | : | Hon. Craig R. Baldwin, J. |
| -vs- | : | |
| | : | |
| DEBORAH QUINN, et al., | : | Case No. 2021CA00126 |
| | : | |
| Defendants - Appellants | : | O P I N I O N |

CHARACTER OF PROCEEDING:    Appeal from the Stark County Court
of Common Pleas, Domestic
Relations Division,  Case No. 2020
DR 0096

JUDGMENT:    Affirmed

DATE OF JUDGMENT:    October 11, 2022

APPEARANCES:

For Plaintiff-Appellee

PAUL HERVEY
4700 Dressler Ave. NW
Canton, Ohio 44718

SUSAN RUBIN
437 Market Ave. North
Canton, Ohio 43702

For Defendant-Appellant Deborah Quinn

STANLEY R. RUBIN
437 Market Avenue North
Canton, Ohio  44702

For Defendant- Appellant QSC Cleaning
Solutions

CHRISTOPHER FREEMAN
PO Box 4396
Copley, Ohio 44321

*Baldwin, J.*

{¶1}    Deborah L. Quinn, Appellant, appeals the decision of the Stark County Court of Common Pleas, Domestic Relations Division, awarding Appellee, Michael Quinn, spousal support in the amount $5,750.00 per month for seventy-nine  months.

## STATEMENT OF THE FACTS AND THE CASE

{¶2}    Deborah and Michael Quinn married in 2001 and divorced in 2021 with an agreement as to the division of property but a dispute regarding Michael's request for spousal support.  The trial court awarded spousal support in the amount for $5,750.00 per month for seventy-nine consecutive months, expressly retaining jurisdiction over the amount and duration of the spousal support order.  Appellant's appeal is limited to arguing that award of spousal support is an abuse of discretion.

{¶3}    The Quinn's successfully built a business during their marriage, QCS, an office cleaning company that was very successful.  The parties agreed that they were receiving generous salaries and large distributions of profits that enabled them to enjoy monthly vacations and expensive vehicles.  They formed a second company, MD Services, Inc. that had been successful but later became dormant and only held ownership of some equipment.

{¶4}    Fifty percent of QCS was transferred to Aaron Hadden in 2017, Deborah's son from another marriage.  Deborah gave Hadden twenty-six percent and Michael transferred twenty-four percent, giving Hadden a fifty percent interest and leaving Deborah and Michael with equal shares of twenty-five percent.  Michael and Hadden did not see "eye to eye" and Michael decided that he was not going to "fight with him forever."  Deborah contended that Hadden had the "best interest of our company" and Michael

concluded that Deborah "wants him that's it" and that he could not continue in business with Hadden. The dispute over the management of the business culminated in the filing of the divorce complaint and, shortly thereafter Deborah and Hadden held a shareholder's meeting that removed Michael from the board of directors of QCS and removed him as an officer of the company.

{¶5} The Quinn's stipulated to a property settlement that was presented to the trial court at the hearing conducted on August 31, 2021. Michael received $1,216,795.00, title to the home valued at $300,000.00 and title to his Harley Davidson Motorcycle. Michael will transfer his interest in QCS to Deborah, giving her a fifty percent share of the company, with her son Aaron, holding the remaining fifty percent. She will keep her automobile and approximately $100,000.00 in bank accounts. QCS was holding approximately $1,160,000.00 in an account and, after a distribution to Michael, it will retain $800,000.00. Deborah, as a fifty percent owner of QCS, will control $400,000.00 of that account.

{¶6} Michael will have no debt as a result of the property distribution and there is no evidence in the record to demonstrate that Deborah will assume any marital debt.

{¶7} Once the property settlement was read into the record and the parties confirmed their agreement on the record, the trial court heard evidence regarding Michael's request for spousal support and his motion to hold Deborah in contempt. As a result of the testimony and evidence presented by the parties, the trial court found that:

> In 2017, QCS had profits of $357,000.00. In 2018, QCS had profits of $341,000.00. In 2019, QCS had profits of $359,000.00. In 2020, QCS had profits of $826,000.00. So, there was over a half million jump between

2019 and 2020. The year to date for 2021 is at $457,000.00 which includes $234,000.00 of a PPE loan which has been forgiven which leaves a year to date profit without the PPE loan of $223,000.00.

The extraordinary profit for 2020 seems to be a result of the fear caused by the pandemic and the lack of knowledge about how to treat it. The fogging treatment requests have dropped substantially. Further, labor costs have increased and material costs have increased due to the effects of inflation. The belief is that profits will fall back to those levels experienced by QCS in 2017, 2018, and 2019. Historically, QCS has been able to pay the owners approximately $541,000.00 every year. Now there will be two (2) owners to divide that sum.

Decree of Divorce, Oct. 25, 2021, p. 3-4.

**{¶8}** The record also shows that the company continued to provide Deborah with an insured, leased, vehicle at a total cost of over one thousand dollars per month. QCS also provided Deborah health insurance.

**{¶9}** The trial court noted that Michael could receive an eight percent annual return on the amount he received as a property settlement, generating $97,343.60 per year. And while he had no debt, Michael would have to purchase a vehicle and was not provided health insurance by QCS or as part of the property settlement.

**{¶10}** The court found that both parties had exaggerated their living expenses, with Michael claiming $10,418.00 per month and Deborah listing $4,721.00.

**{¶11}** The trial court found that "[s]pousal support is appropriate and reasonable under the facts and circumstances of this case" and issued the following order:

Following review of the fourteen (14) factors, this court orders commencing November 1, 2021, Wife shall pay to Husband as and for spousal support the sum of $5,750.00 per month for 79 consecutive months. This court maintains jurisdiction over the amount and duration of the spousal support order. The spousal support obligation of Wife shall cease upon the expiration of the spousal support term set forth herein, remarriage of Husband or the death of either party, whichever event occurs first in time. Once again, this court considered the required fourteen (14) factors, prior orders of the court, the evidence presented, admitted exhibits and financial statements of the parties. Wage withholding or other appropriate withholding applies. As indicated, the court retains jurisdiction over the amount and duration of spousal· support. Therefore, this court may modify the amount or duration of this spousal support order upon the change of circumstances of a party, which includes, but is not limited to, any increase or involuntary decrease in the parties' wages, salary, bonuses, living expenses or medical expenses. R.C. 3105.18(e)(l), (F).

(Divorce Decree, Oct. 25, 2021, p. 8, 10-11).

**{¶12}** Deborah filed a timely appeal and submitted a single assignment of error:

**{¶13}** "I. THE TRIAL COURT ABUSED ITS DISCRETION IN ORDERING SPOUSAL SUPPORT RESULTING IN MICHAEL'S YEARLY INCOME EXCEEDING DEBORAH'S BY MORE THAN $71,000."

**STANDARD OF REVIEW**

**{¶14}** A trial court's decision concerning spousal support may be altered only if it constitutes an abuse of discretion. *Kunkle v. Kunkle,* 51 Ohio St.3d 64, 554 N.E.2d 83 (1990). An abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore,* 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983). R.C. 3105.18(C)(1) provides that a trial court may award spousal support when it is "appropriate and reasonable." R.C. 3105.18(C)(1) sets forth the factors a trial court must consider in determining whether spousal support is appropriate and reasonable and in determining the nature, amount, terms of payment, and duration of spousal support.

**{¶15}** These factors include: (a) income of the parties, from all sources * * *; (b) the relative earning abilities of the parties; (c) the ages and the physical, mental, and emotional conditions of the parties; (d) the retirement benefits of the parties; (e) the duration of the marriage; * * * (g) the standard of living of the parties established during the marriage; (h) the relative education of the parties; (i) the relative assets and liabilities of the parties; * * * (l) the tax consequences, for each party, of an award of spousal support; * * and (m) any other factor that the court expressly finds to be relevant and equitable.

**{¶16}** Trial courts must consider all the factors listed in R.C. 3105.18(C). We have previously held that a trial court need not acknowledge all evidence relative to each and every factor listed in R.C. 3105.18(C) and we may not assume that the evidence was not considered. *Hutta v. Hutta*, 177 Ohio App.3d 414, 2008-Ohio-3756, 894 N.E.2d 1282 (5th Dist.). The trial court need only set forth sufficient detail to enable a reviewing court to

determine the appropriateness of the award. *Id.,* quoting *Kaechele v. Kaechele,* 35 Ohio St.3d 93, 518 N.E.2d 1197 (1988).

## ANALYSIS

**{¶17}** The parties do not dispute the relevant facts or the applicable standard of review, proposing that the only issue for our review is the evaluation of the trial court's discretion. We find that Appellant analyzes the spousal support order relying on data from the past without accounting for the change that occurred when Michael was removed from the payroll and shareholder distribution list of QCS. Michael's argument does suggest that Deborah has the more valuable asset that will provide a sustained cash flow, but he does not analyze the data that is available to address that issue and we find that his argument lacks detail. Because Deborah's argument arises from what she describes as an inequitable difference in the parties' income as a result of the spousal support order, we must consider the historical data the parties offered and the impact of Michael's departure from the company.

**{¶18}** Deborah argues that the spousal support order will result in a reduction of her income of $200,000.00 to $131,000.00 while Michael will receive an annual income of $202,000.00 comprised of his social security, income from the property settlement and the spousal support payments. While the court did find that Deborah was historically receiving $200,000.00 in salary and distributions from QCS, the record also shows that Michael was receiving a matching amount and that sum will be available to Deborah to withdraw from the company as a result of the property settlement.

**{¶19}** Michael's Exhibit 5, accepted in evidence without objection, provides a summary of his income and Deborah's income and distributions received from QCS for

2014 through 2020. Michael received an annual salary of $50,000.00 and an average distribution from QCS of $94,912.57 based upon his twenty-five percent interest in the company. The record reflects that his average annual income was over $144,000.00 or approximately $12,000.00 per month, comprised of $4,166.67 in salary and $7,909.33 in distributions.

**{¶20}** Michael has transferred his interest in QCS to Deborah as part of the property settlement and the distributions attributable to Michael's twenty-five percent interest in QCS will now be paid to Deborah. She may also receive an increase in salary as she may be assuming some or all of Michael's responsibilities.

**{¶21}** Deborah's income will not be limited to what she was receiving in the past, but, based upon the past performance of QCS, will be at least $294,000.00 and potentially more if her salary is increased. We acknowledge that Deborah's income could change significantly in either direction due to changes in the economy, but neither party predicted a material change in business when compared to its entire history. The company had recently entered into what may be a lucrative contract, so the evidence supported a finding that the income will continue at historical levels or increase. If QCS experiences a significant hardship and Deborah's income was to decrease, she may return to the trial court for a modification of spousal support. The trial court expressly reserved jurisdiction for that purpose.

**{¶22}** We find that $294,000.00 is the correct figure to use when considering the trial court's exercise of discretion as it more accurately reflects Deborah's income as a result of the property settlement and a review of the financial data provided to the trial court.

{¶23} When we use the correct figure to analyze spousal support, the picture changes dramatically and Deborah's argument regarding the inequity of spousal support is undermined. Michael will still receive $202,000.00, the total of $69,000.00 in spousal support, $36,000.00 in social security and approximately $97,000.00 in income from investing the funds he received from the property settlement. Deborah's income of $294,000.00 will be reduced by the spousal support to $225,000.00, if she does not receive an increase in her salary. She also receives benefits from QCS in the form of health insurance and a leased vehicle, further increasing the difference between her income and Michael's. Using the correct figures for comparison demonstrates that Deborah's income will exceed Michael's by more than $20,000.00. Further, QCS could potentially provide Deborah a great income as the business grows while Michael, though well compensated, remains on a fixed income.

{¶24} We have reviewed the record and the trial court's judgment in this case. The trial court confirmed that it had reviewed the relevant factors listed in R.C. 3105.18 and found that spousal support in the amount of $5,750 per month for seventy-nine months was reasonable and appropriate. Appellant's sole objection, that the order creates an unreasonable disparity between the parties' income is refuted by our analysis of the financial information in the record. We hold that the trial court did not abuse its discretion by awarding spousal support in the amount of $5,750 per month for seventy-nine months.

{¶25} Appellant's assignment of error is denied.

{¶26} The decision of the Stark County Court of Common Pleas, Domestic Relations Division is affirmed.

By: Baldwin, J.

Gwin, P.J. and

Delaney, J. concur.